ANTHONY, *Appellant*, v. RICE *et al.*

In Banc, May 9, 1892.

1. **Divorce:** DECREE IN FOREIGN STATE: CONSTRUCTIVE SERVICE. A decree of divorce pronounced by a competent court, in favor of a *bona fide* domiciled citizen of the state and against a non-resident, where the service of process was made by reasonable constructive service, is, in the absence of fraud and collusion, valid and binding, both in the state where rendered and elsewhere.

2. **Homestead:** SALE BY ADMINISTRATOR: PURCHASER'S TITLE. An administrator filed a petition for the sale of decedent's land to pay debts, and the widow being entitled to homestead filed her petition, asking to have her .homestead set off, and that no order of sale be made till this was done, and subsequently the court made an order of sale, wholly ignoring the widow's application, and without referring to it. *Held* that the sale and conveyance under such order by the administrator were subject to the widow's homestead right, the doctrine of *caveat emptor* applying to the purchaser at such sale.

3. ——: DEBTS CONTRACTED BEFORE HOMESTEAD: BURDEN OF PROOF. An administrator's sale of land for the payment of debts will not divest the widow and minor children of their rights, unless the sale was made to pay debts contracted before the homestead, and the burden of proof is on the person claiming under the administrator's deed to show that the debts were so contracted. (*Overruling Murphy v. De France,* 105 Mo. 54.)

4. ——. A sale of land in which a homestead exists, without its assignment, is not void, but conveys the land subject to the homestead.

*Appeal from Morgan Circuit Court.*—HON. E. L. EDWARDS, Judge.

REVERSED AND REMANDED.

*A. W. Anthony pro se.*

(1) Plaintiff may use two chains of title. *Public Schools v. Risley,* 28 Mo. 415. (2) The probate court is a court of record, having original jurisdiction in the matter of the sale of real estate of decedents for the payment of debts. If the order of sale was erroneous, any person interested could appeal. 1 Wagner's Statutes, 1872, sec. 1, p. 119. (3) In the case at bar, the court having acted upon the petition and made the order of sale, notwithstanding objections filed, that order was the judgment of a court of competent authority, upon a subject within its jurisdiction, and its proceedings cannot be collaterally assailed. If upon any given state of facts the court had the power to order the sale of the homestead, having exercised the power and made the order, the sale cannot be questioned in this action. *Gray v. Bowles,* 74 Mo. *loc. cit.* 423, 424; Smythe on Homesteads & Exemptions [Ed. 1875] sec. 414, p. 414; Rorer on Judicial Sales [Ed. 1873] secs. 265–290–1, p. 102; *Naylor's Adm'r v. Moffat,* 29 Mo. 126; *Johnson v. Beasley,* 65 Mo. 250, clause 5 of opinion; *Wolf v. Robinson,* 20 Mo. 459; *Sims v. Gray,* 66 Mo. *loc. cit.* 616; *Grayson v. Weddle,* 63 Mo. 523; *Knowlton v. Smith,* 36 Mo. 507; *Rugle v. Webster,* 55 Mo. 250; *Bagley & Woods v. McGinnis,* 57 Mo. 362; *Brooks v. Duckworth,* 59 Mo. 49; *Scott v. Crews,* 72 Mo. 262, and cases cited; *Cornett v. Williams,* 20 Wall. (U. S.) 249; *Cooper v. Duncan,* 20 Mo. App. 355; *Jeffries v. Wright,* 51 Mo. 215; *Ellis v. Jones,* 51 Mo. 180; *Hardin v. Lee,* 51 Mo. 244; *Sullivan Co. v. Burgess,* 37 Mo. 300. (4) *Rogers v. Marsh,* 73 Mo.

64, followed by *Kelsay v. Frazier*, 78 Mo. 110, if sustained, overthrows all the foregoing decisions. In the later cases, however, the court gets back to the only true doctrine. *Henry v. McKerlie*, 78 Mo. 429; *State v. Donegan*, 83 Mo. 374; *Yeoman v. Younger*, 83 Mo. 428; *Lewis v. Morrow*, 89 Mo. 174; *Fenix v. Fenix*, 80 Mo. 33; *Camden v. Plain*, 91 Mo. 129; *Rowden v. Brown*, 91 Mo. 429. (5) The presumption is that the court passed upon the claim of Evaline U. McCoy for homestead and decided against it. *Baker v. Henry*, 63 Mo. 517; *Jones v. Manly*, 58 Mo. 559; *Pattee v. Thomas*, 58 Mo. 163; *Gates v. Tusten*, 89 Mo. 13; *Brooks v. Duckworth*, 59 Mo. 49; *Wertz v. Wertz*, 11 Mo. App. 26; *Ellis v. Jones*, 51 Mo. 180; *Henry v. McKerlie*, 78 Mo. 416. (6) If Evaline U. McCoy was entitled to a homestead in the premises, the sale without admeasuring it was not void, and plaintiff in this action was entitled to the surplus. *Poland v. Vesper*, 68 Mo. 727; *Blandy v. Asher*, 72 Mo. 27; *Crisp v. Crisp*, 86 Mo. 630. (7) Lavinia McCoy, having been divorced in Livingston county, Missouri, from John C. McCoy for his misconduct, did not lose her right to dower and homestead. *Brown v. Brown*, 68 Mo. 388; *Blandy v. Asher*, 72 Mo. 27; *Hunt v. Thompson*, 61 Mo. 148; *Whitehead v. Tapp*, 69 Mo. 415. And she, taking an absolute estate, under the law in force in 1873, of course could convey to whom she pleased. Plaintiff has her deed. (8) Fraud vitiates everything. *Corby v. Wright*, 4 Mo. App. 443; *Marx v. Fore*, 51 Mo. 69; *Ward v. Quinlivan*, 57 Mo. 425; *Eager v. Stover*, 59 Mo. 87. (9) Both decrees were obtained without personal service, and upon insufficient publication under our statute. Both decrees are absolutely void. *Flato v. Mulhall*, 72 Mo. 522; *Philpot v. Railroad*, 85 Mo. 164.

THOMAS, J.—This is ejectment for lot 104, of block 49, of Wyan & Gilbraith's addition to the town of Versailles, Morgan county, Missouri. Though the defendants prevailed in the court below, they have filed in this court no abstract or brief.

The facts as disclosed by the plaintiff's abstract are these: John C. McCoy and his wife, Lavinia, resided in Morgan county prior to 1857. At that date they moved to Livingston county, in this state, where they resided for several years. He then went to Indiana and procured a divorce there in 1864 and then married in Illinois Evaline Wallace, who had procured a divorce from her husband in an Illinois court. He came back to this state, and in 1867 purchased lots 104 and 105, of block 49, of said addition to the town of Versailles. In 1869 McCoy's first wife obtained a divorce from him by the judgment of the proper court of Livingston county, after personal service of summons on him. McCoy and his second wife resided on said lots from the time he purchased them, till his death in 1873. The administrator of McCoy sold said lots in 1875 to Kelsey by virtue of an order of the probate court for the payment of the debts of the deceased. Kelsey, by quitclaim deed, conveyed to the plaintiff, and this is his title. After the administrator filed his petition in the probate court for the sale of these lots and other lands of the deceased, the widow filed in that court her petition praying that further proceedings be stayed till dower and homestead were assigned to her, and praying for the appointment of commissioners to make the assignment. This petition of the widow was filed September 14, 1874, and in October following the court made the order of sale as prayed for by the administrator without naming the widow or noticing her petition or her rights in the premises.

The defendant's title to the property is based on the claim of said Evaline to homestead and dower therein.

I. The plaintiff insists that the said Evaline was not the legal wife of said McCoy, and, therefore, not entitled to a homestead or dower in his property, on the ground that the decrees of divorce rendered in 1864 by the court of common pleas of La Porte county, Indiana, on the petition of McCoy, and by the circuit court of Adams county, Illinois, on the petition of said Evaline, are void for want of sufficient notice and for fraud.

Those decrees show that McCoy was a resident of Indiana, and that his wife was not a resident of that state, and that said Evaline was a resident of Illinois, and that her husband was a non-resident of that state, and the notice given, in each case was by newspaper publication only. It may be true, as urged by plaintiff, that the notice given was wholly insufficient under the laws of this state, but that does not affect the validity of those decrees. Those courts, in giving notice and rendering judgment, were guided and governed by the laws of their respective states. Those decrees are presumptively valid, and this presumption must prevail until it is overcome in a proper way by proper proof. It has been ably and exhaustively argued that a decree of divorce obtained without actual service of process on the defendant, and by publication only, as is clearly shown by the record in these divorce proceedings, is utterly and absolutely void. A proceeding in divorce is a proceeding *in rem*. In it the petitioner seeks an adjudication upon his or her marital *status*, which is the *res*.

Black in his work on judgments, section 928, says: "And on the admitted principle that each state has the right to determine the *status*, and the domestic

relations of its own citizens, the conclusion appears irresistible that the *bona fide* presence of the *res*—the *status* of a domiciled citizen—should give its courts jurisdiction.'' This author, after laying down the general rule that actual and personal notice to defendant in a divorce proceeding is not indispensable, adds: ''Although the foregoing arguments have generally been accounted complete and irrefragable, yet some of the courts, while conceding one or more of the separate points, have refused to accept the conclusion to which the whole line of reasoning logically and inevitably leads. Thus the books exhibit a few decisions, and some *dicta,* to the effect that a decree of divorce against a non-resident, founded upon a merely constructive service of process, as by publication, is void and of no effect. But some of these cases have been overruled, others have been tacitly repudiated, and the true and fundamental principles governing the question have become more and more clear to the courts, and have gained weight with the increasing body of decisions. So that now the rule may be regarded as settled, by the great preponderance of authority, that a decree of divorce pronounced by a competent court, in favor of a *bona fide* domiciled citizen of the state, and against a non-resident, where service of process was made by a reasonable, constructive notice, and in the absence of any fraud or collusion, is valid and binding, both in that state and in all other states.'' Sec. 932. And this doctrine is the established law of Missouri. *Gould v. Crow,* 57 Mo. 200.

The further objection made in the case at bar, that the decrees were procured by fraud, is an assertion only, for there is no evidence of fraud in this record, and in the absence of evidence to the contrary we must hold these decrees valid on the maxim, *Omnia præsumuntur rite et solemniter esse acta.* This being the case it can make

no difference that McCoy's first wife afterwards obtained a divorce from him in this state for his fault. Our conclusion on this branch of the case is, therefore, that the said Evaline was the legal wife of said deceased, at the time of his death, and, therefore, entitled to all the rights of a legal wife.

II. McCoy and his second wife resided on the lots and in the dwelling-house thereon for many years, and it was his homestead property at the time of his death. As the law stood at that time the homestead passed to the widow in fee simple, exempt from the payment of the debts of the husband. The title vested in her subject only to the rights of minor children, if any there were. *Skouten v. Wood*, 57 Mo. 380.

The probate court had jurisdiction to cause the homestead to be assigned, and this should have been done on the petition filed by the widow in this case, but the failure of the court to cause the homestead to be assigned cannot have the effect of depriving her of it. An administrator's sale of property for the payment of debts will not divest the widow and minor children of their rights unless the sale was made to pay debts contracted before the husband acquired the homestead, and the burden of proof is on the party claiming under the administrator's sale to show that the debts were so contracted. It was stated in *Murphy v. De France*, 105 Mo. 54, that the burden of proof was on the party claiming the homestead, that the debts were not contracted prior to the acquisition of the homestead; but the question was not really involved in that case, and, besides that, it is in direct conflict with *Rogers v. Marsh*, 73 Mo. 64, and *Kelsay v. Frazier*, 78 Mo. 112, which it does not mention, the latter involving the homestead now in controversy in this case. We think the better rule to be as declared in these cases last cited. But, in the application of this rule, the parties are not

confined to the recitals in the judgment of the probate court, but the date of the contracting of the debts may be shown by any competent evidence, and in this respect we reaffirm what is said in *Murphy v. De France, supra*. The probate court does not sit, in passing on a petition to sell lands for the payment of the debts of a decedent, to determine the extent or nature of the title that ought to be sold, nor what title will be sold. It simply makes an order for the sale of all the right, title and interest of the decedent in the property, whatever that may be, and the doctrine of *caveat emptor* applies in full vigor to the purchaser at such sale.

It is now well settled in Missouri that the orders and judgments of probate courts, in the exercise of their jurisdiction, are entitled to the same favorable intendments and presumptions as are accorded to orders and judgments of circuit courts. *Price v. Real-Estate Ass'n*, 101 Mo. 107. This principle, however, does not in the least, shake the authority of *Rogers v. Marsh*, and *Kelsay v. Frazier, supra*. Had the petition of the administrator, and the order of sale made thereon, included property not owned by the deceased at the time of his death, the administrator's deed would have conveyed no title whatever. It is true, the court proceeded to order the sale of the land after the widow had filed her petition for the assignment of her homestead, but there was no adjudication that she was not entitled to a homestead. The court simply ignored her petition, made no order in reference to it, and did not notice her claim. Had there been such an adjudication by the probate court, a question would arise which we need not now discuss. The administrator's sale, therefore, operated to convey to the purchaser the interest of deceased, subject to sale for the payment of debts, and subject, of course, to the homestead of the widow.

III.   The plaintiff asked the court to declare the law to be that, if "defendant Rice made no claim to the premises sued for, except to thirty square rods of ground, including the dwelling thereon, as the homestead right of one Evaline U. McCoy, and that the premises sued for contain more than thirty square rods of ground, then, even if the court believe from the evidence that said E. U. McCoy was entitled to such homestead right, and had transferred or conveyed a half interest in same to said Rice, yet the plaintiff is entitled to a verdict for the excess over the thirty square rods," which the court refused to do, but, on the contrary, held, by an instruction given, that the sale of land without assigning the homestead to the widow was void and conveyed no title, "although the premises were larger than she was entitled to under the law." This was error.  By the statute, as it stood in 1873, the homestead, in cities having a population of forty thousand inhabitants or more, could not exceed eighteen square rods of ground in extent, or $1,500 in value, and in cities or other incorporated towns having a less population than forty thousand inhabitants the homestead could not exceed thirty square rods of ground in extent, or $1,500 in value.  1 Wagner's Statutes, sec. 1, p. 697.

The evidence in this case shows that the lot in dispute has over fifty square rods of ground, being eighty-five by one hundred and seventy feet in area.  The lot, therefore, exceeded the area covered by the homestead, and the question presented is, whether the plaintiff, in this action, can recover the excess.  In some jurisdictions it is held that a sale of property in which a homestead right exists, without an assignment of the homestead, is void, and conveys no title, but in others, and among them is Missouri, it is settled law that such a sale is not void, but conveys the land subject to the

homestead right.    *Bunn v. Lindsay*, 95 Mo. 250;  *Crisp v. Crisp*, 86 Mo. 630;  *Poland v. Vesper*, 67 Mo. 727, and *Blandy v. Asher*, 72 Mo. 27.    This being the case the court should have given the instruction prayed by plaintiff, and then, if applied for, should have appointed commissioners, by virtue of section 5443, Revised Statutes, 1889, to set off the homestead, and have given judgment for plaintiff for the recovery of the excess. *Crisp v. Crisp, supra.*

The judgment will accordingly be reversed, and the cause remanded, with directions to cause this to be done.    All concur; GANTT and BARCLAY, JJ., in the result for reasons to be stated by them.

### SEPARATE OPINION.

BARCLAY, J.—It is provided by our statute law that "the probate court having jurisdiction of the estate of the deceased housekeeper or head of a family shall, when necessary, appoint three commissioners to set out such homestead to the person or persons entitled thereto."    R. S. 1889, sec. 5439.    This was also part of the homestead law of 1865.    G. S. 1865, ch. 3, sec. 5.    It was further the law then, and is yet, that no right of homestead could be asserted as against debts which antedate the filing for record of the deed to such homestead.    G. S. 1865, ch. 3, sec. 7; R. S. 1889, sec. 5441.

In this condition of the law, we see in the case before us that the administrator, Sims, applied, July 14, 1874, "in the matter of the estate of John C. McCoy, deceased," for an order of sale of certain lands, including specifically the identical lot here in dispute. On September 14, 1874, the widow appeared by counsel and by formal petition, "in the matter of the estate of John C. McCoy, deceased," set up a claim of home-

stead in lots 104 and 105 (the former lot being the subject of this action), representing that the administrator in charge of said estate had filed his petition for the sale of said real estate for the payment of debts of the deceased, and praying "that all further proceedings on behalf of said administrator be stayed," until her homestead was set apart; "that commissioners be appointed to do the same," and stating, incidentally, that her petition was "filed as an answer and counter-claim to the petition for the sale of said lands."

Thereafter, at the October term, 1874, "in the matter of the estate of John C. McCoy, deceased," the probate court made the order of sale for the payment of debts as prayed by the administrator, after the notice required had been shown. This order included, in terms, the lots she had claimed as the homestead. No further or other action on Mrs. McCoy's petition appears; but the legal effect of granting the order of sale, in the circumstances, was plainly a denial of it.

If the debts, which the sale was sought to satisfy, were prior in time to the purchase of the land in question by McCoy, no homestead right could exist or be maintained. It was within the jurisdiction of the probate court to decide whether the land was subject to the claim of homestead, or, conversely, whether it was liable to sale for McCoy's debts. The widow submitted that question to the action of the court as did the administrator. It is evident that all parties regarded the issue as a single one, and the ruling as deciding it. If the claim of homestead were valid, the probate court should not, and we are now bound to assume (in support of the correctness of its action) would not, have directed the sale of the exempt land to pay debts of the deceased. But the creditors and others interested had the right to have the court decide whether or not the land was subject to such sale. It did so decide,

and it seems to us that its ruling should be accepted as a finality.

The judgments of a probate court (made within the sphere of its legitimate powers) should be accorded the same presumptions of validity and regularity that attach to the final decisions of other courts. Probate judges in Missouri are not required to be learned in the law. Their records should be viewed and construed liberally where their jurisdiction of the subject appears. The substance rather than mere form of their records should be regarded where the former is clearly discernible.

Where the necessary effect of a judgment is the decision of a particular issue, directly raised, though there may be no specific finding as to the latter, it is held concluded by such judgment. *Moore v. Moore* (1890), 14 S. W. Rep. (Ky.) 339; *Burnett v. Smith* (1855), 4 Gray, 50; *Campbell v. Mayhugh* (1854), 15 B. Mon. 142.

Without going into any other of the mooted questions in this case, we think the trial court erred in ruling to the contrary of the positions above indicated, and for that reason concur in reversing and remanding. GANTT, J., joins in this opinion.