# OLLIE BALANCE v. LIZZIE GORDON and PEARL GORDON, Appellants.

### Division One, December 24, 1912.

1. **HOMESTEAD . LAWS: Liberally Construed.** The correct judicial attitude towards homestead laws is one of as great liberality in construction as their words and spirit permit. Courts should be quick to see and astute to aid the beneficent purposes of homestead statutes. They were not framed to aid creditors to collect debts. Their purpose was to preserve a home for the family against the vicissitudes of fortune.

2. **HOMESTEAD: Interest of Children, etc.** There is a well-marked distinction between the quality of a mere exemption privilege in the householder and the homestead estate vesting in his widow and minor children.

3. ————: ————: **Date of Record of Deed.** Whether or not the time of filing the deed to the homestead is material in considering the title of the widow and minor children, will not be decided where the homestead was acquired before the note upon which judgment was rendered in the probate court, under which the property was sold to appellants by the administrator, was made—there being no proof that the note was given for a pre-existing debt.

4. ————: ————: ————: **Presumption that Deed was Recorded.** Where the answer admits that the householder acquired title to the land in 1893, the presumption is, in the absence of any evidence to the contrary, that the deed was presently put of record.

5. ————: **Antedating Debt: Burden of Proof: Sale Ordered by Probate Court.** A creditor who through legal process has a homestead sold to pay his debt must carry the burden of showing the debt was older than the homestead. The allowance of the debt by the probate court, and its order to sell the property claimed as a homestead, do not amount to presumptive proof that the debt antedated the homestead. It will not be presumed, in aid of the creditor's effort to defeat the homestead, that the probate court would not have ordered the sale unless the debt antedated the homestead.

6. ————: **Sale Subject to Homestead: After 1895: Vested Interest in Remedy.** Although the debt was made and the homestead established prior to 1895, and although under the Act of 1875 the homestead property could be sold to pay the householder's debts subject to the widow's and children's con-

tinued right of homestead therein, the creditor had no such vested interest in that remedy as gave him any right to the property as a purchaser where the householder died and an attempt was made to sell the homestead property after the enactment of the Act of 1895, which does not permit a sale, subject to the widow's and 'minor children's right to homestead, to pay the householder's debts. The purchaser's interests were restricted by the homestead statutes existent when the householder died.

7. ————: Vested Interests of Creditors and Widow. The rights of creditors in the homestead property, and the rights of the widow and minor children therein, must be measured by the law in existence at the death of the householder. The creditor has no vested interest in the property given by a particular statute no longer in force when the householder dies, though the debt was made and the homestead was acquired before that statute was repealed; and neither does the widow have any vested right in a homestead taken away by statute before the householder died.

Appeal from Moniteau Circuit Court.—*Hon. W. H. Martin*, Judge.

AFFIRMED.

*C. M. Gordon* and *S. C. Gill* for appellants.

Under the Homestead Law of 1875, Sec. 5439, R. S. 1889, the homestead of deceased could be sold to pay the debts of deceased, subject to the homestead rights of his widow and minor children. Keene v. Wyatt, 160 Mo. 1; Robbins v. Boulware, 190 Mo. 33. The construction of the Homestead Law of 1875 was as much a part of the contract of indebtedness—the Taylor note in this case—as any other part of it. Broyles v. Cox, 153 Mo. 251; 36 Cyc. 1210 and 1211. Homestead exemption rights are effective only from date of filing for record the deed to such homestead. Sec. 5441, R. S. 1889; Acreback v. Myer, 165 Mo. 685. If the construction of the Homestead Law of 1875 was a part of Taylor's contract with Balance—said note dated Oct. 27, 1894—then such homestead of deceased was subject to sale to pay said debt, whether

debtor died prior to or after said amendment of 1895 to said Sec. 5439, R. S. 1889. If the debt of Taylor was contracted before the filing of the Balance deed for record, it was subject to be sold to pay said debt under any theory of this case; but if such deed were filed for record prior to date of debt expressed in said note dated Oct. 27, 1894, the creditor, Taylor, under the Homestead Law then in effect, had the right to rely on Balance paying same if he lived, and in case of his death to rely on the construction of said homestead law then in force, to have said homestead sold to pay said debt, subject to the homestead rights of said widow, Dolly Balance, and any minor children, and that subsequent legislation could not take away this right.

*John M. Williams* for respondent.

(1) The pleadings and evidence in this case admit and show that the property in controversy was the homestead of Gilbert Balance, purchased by him November 22, 1893, that he built a cabin on it immediately afterwards, and lived there until his death. The debt and the only debt probated against his estate was due Taylor and dated Oct. 27, 1894, nearly a year after the homestead was acquired by Balance. The debt due said Taylor as evidenced by said note, having occurred after the acquisition of the homestead, the homestead was not liable for its payment. Sec. 5439, R. S. 1889. There is no evidence showing that the debt was contracted before the note was given. (2) It devolved on the defendants to show all the facts necessary to authorize the probate court to authorize the sale, and these facts require the court to find that the debt from Balance to Taylor was prior to the deed and also prior to the filing of such deed for record. Anthony v. Rice, 110 Mo. 229; Rogers v. Marsh, 73 Mo. 64; Kelsay v. Frazier, 78 Mo. 112.

LAMM, J.—Gilbert Balance, an ex-slave, died full of years and testate on the 1st of August, 1898, in the city of California, seized of lots 25 and 26 in Griner's Addition and leaving a widow, Dolly, and children—one of them, a minor daughter Ollie, the plaintiff. Gilbert, by his will duly probated, devised the lots to Dolly during her life and after her death to plaintiff. Defendants having taken possession of the lots in April, 1908, plaintiff presently sued to determine and adjudge title, averring in her petition facts sufficient to invoke old section 650 and (*inter alia*) that the lots were the homestead of Gilbert for many years before and at his death.

By answer, defendants admit Gilbert died as alleged, leaving a will with the provisions alleged; averring that they, defendants, took and held possession; averring they claim as owners, and denying plaintiff has any interest; averring that Gilbert acquired title by deed on the 22d day of November, 1893; that thereafter in October, 1894, he executed a note for forty dollars "*in settlement of a debt which he then owed the said Taylor and which he had owed for a long time;*" that the note was not paid; that one Hardy was appointed and qualified as administrator of Gilbert's estate; that the Taylor note was allowed against the estate by the judgment of the probate court; that, other than the lots, there was no property to pay the note or costs of administration; that the lots were ordered sold by the probate court and were sold to pay the Taylor debt and said costs; that defendants as the highest and best bidders purchased at that sale for forty dollars and received an administrator's deed; that afterwards in 1902 they acquired the widow's interest by deed; wherefore by said conveyances they became sole owners of the lots. In conclusion the answer prayed title be adjudged in defendants.

(*Note*: In one clause the answer sets up title through a deed under a tax proceeding and mesne con-

veyances, but it developed at the trial that plaintiff was not a party to the tax suit and the court ruled out the record anent that sale. As defendants do not now complain of that ruling, that matter is laid aside on the shelf. This, under the precept: What is not judicially presented should not be judicially decided.)

By replication plaintiff reasserts the claim in her petition and next avers that the Taylor debt was not legally charged against the homestead of Gilbert Balance in his lifetime and that the probate proceedings whereby a sale of the homestead was attempted by the administrator were in the teeth of the statutes and void.

The court adjudged title in plaintiff subject to the life estate of Dolly, the widow (now held by defendants); and defendants appeal.

In addition to the admission in the pleadings, the facts are that the lots were Gilbert's homestead in 1893 and on up to the time of his death. On October 27, 1894, he executed a due bill to one Taylor for forty dollars payable one day after date. He paid on the same $27.60. On December 1, 1900, the duebill was allowed in the probate court against his estate in the sum of $21.75 and the lots were sold by proceedings in that court to pay that allowance and costs of administration, defendants becoming the purchasers, and afterwards by quitclaim deed getting the widow's title. Said deed refers to the widow's interest, thus: "my interest being a life estate."

There was no evidence tending to prove the allegation of the answer that the Taylor note was given in settlement of a debt which Gilbert owed Taylor "for a long time" or for any time prior to the date of the note. There is no direct evidence *when* Gilbert's deed to his homestead was recorded.

I.  There are some general guiding propositions it is not amiss to invoke by way of foreword.

(a)  *First*:  The correct judicial attitude toward homestead laws is one of as great liberality in construction as their words and spirit permit.  Thus, courts should be quick to see and astute to aid the beneficient purposes of homestead statutes.  Verily, as nature abhors a vacuum, so enlightened public policy abhors pauperage and vagrancy.  The force of homestead laws is spent in preventing both and all their evil attendant train.  The broad public policy mentioned is the very life and essence of such laws.  So, such laws are intended to discourage a mere tenantry.  They aim at breeding the virtues springing from rooting citizens to the soil of their country.  Bold and self-reliant householders are a nation's pride and defense. Those laws were not framed in the interest of creditors to aid a debt-collecting subversive of homes; *contra*, they face the other way with emphasis.  They are a statutory shield to protect the householder while he lives and his widow and minor children on his death from vicissitudes of fortune.  All men contracting with a householder, contract in the light of such controlling fact.  To that end the homestead is forbidden fruit to the creditor.  He may not take or eat thereof.  Such statutes are not in contravention of the common law, hence are to be liberally construed. Above all, they are not to be dwarfed or whittled away by sour, overnice or austere construction.  In effect, one or the other of those propositions is announced in one or the other of the following cases (*q. v.*):  Blandy v. Asher, 72 Mo. l. c. 28; Gowdy v. Johnson, 104 Ky. 648; Brewington v. Brewington, 211 Mo. l. c. 60, *et seq.;* Vogler v. Montgomery, 54 Mo. l. c. 583; Bushnell v. Loomis, 234 Mo. l. c. 391, *et seq;* Seilert v. McAnally, 223 Mo. l. c. 516.

(b)  *Second*:  The difficulties incident to the exposition of our several homestead statutes, as abundantly shown by appellate cases, have been so prevalent and acute as to lead to *dicta* afterwards repudi-

.ated, or to rulings afterwards exploded or modified. It seems difficult to hold a uniform voice in applying the details of homestead statutes, worded as ours. Hence, the wiser course in homestead judicial construction is to decide no more than precisely what the case in judgment calls for, and nothing without caution.

Giving heed to the foregoing, we come to a closer view of the case.

II. Something in said of the tenor and effect that the record does not disclose the date of record of the homestead deed. The point is, we suppose, that under Sec. 6711, R. S. 1909 (in force at the time of the administrator's sale), a method is pointed out for ascertaining what homesteads shall be subject to attachment and levy of execution, it being provided by that section that a homestead should be subject to attachment and levy upon all causes of action existing at the time of acquiring the homestead, and, further, that *"for this purpose* such time shall be the date of the filing in the proper office for the records of deeds, the deed of such homestead," etc. Given that provision in that section, is it to be read into the section relating to vesting homesteads in widows and minor children? In passing we call attention to the fact that there is a well marked distinction between the quality of a mere exemption privilege in the householder and the estate vesting in his widow and minor children. [Brewington v. Brewington, supra.]

As said, section 6711 pertains to attachment and levy of execution. Now, no attachment or levy of execution runs against a dead man's estate. Hence the section does not on its face, at least, pertain to the vesting of a homestead in a widow or minor children or the acquisition of a homestead for such purpose. That is provided for, to-wit, in Sec. 6709, R. S. 1909 (the provisions of which, pertinent here, were in ex-

istence when Gilbert Balance died). But we need not stop to inquire whether the time of filing the deed to the homestead is material in considering the title of such widow and children under section 6709. This is so because in this case it is conceded in appellants' brief there was a homestead with homestead rights vested. The proof was that the homestead was acquired in 1893 and hence was in existence when the Taylor note was made. Under such circumstances we can see no substance in the silence of the record on the date when the deed to the homestead was filed. The homestead confessedly existing, we will take the fact as we find it.

But there is another view heading to the same result. In appellants' answer it is admitted Gilbert Balance acquired title by a deed in 1893. With that admission in the case, and not controverted, would it not be presumed that the deed was put of record presently? That is the usual course—the course contemplated by the statute and dictated by due care and prudence. Presumptively the usual course was taken, absent proof to the contrary. We inquire: What avail would it be to reverse this judgment on this narrow point, only to be confronted on retrial with the fact the deed was promptly recorded, as we have not a particle of doubt was the case? Indeed, the very allegations in the answer relating to the execution of the deed and its date argue persuasively that appellants got those facts from the records, the receptacle provided by the law for such information on titles.

Furthermore, defendants' answer is obviously drawn on the theory that a homestead existed and was operative to defeat the administrator's deed unless affirmative matter, pleaded therein, was effective (when proved) to sustain the administrator's deed. That affirmative matter is outlined in the allegation that Taylor's debt existed so long before the date of

the note, as to antedate the acquisition of the homestead.

III. In putting in their proof, defendants failed to sustain the allegation in their answer, meaning in effect that the Taylor debt antedated the acquisition of the homestead. Does the order of sale in the probate court supply presumptive proof of that fact? In other words: Will it be presumed in aid of defendants' effort to defeat a homestead right, that the probate court would not have ordered the sale unless the fact was as suggested in the answer? It was early established that a creditor who through legal process laid his hands on a homestead and sold it to pay his debt could only validate his act by carrying the burden of showing that the debt was older than the homestead right. [Rogers v. Marsh, 73 Mo. 64; Kelsay v. Frazier, 78 Mo. 111; Daudt v. Harmon, 16 Mo. App. 203.] Presently it was held otherwise. [Murphy v. De France, 105 Mo. 53.] Presently, in Anthony v. Rice, 110 Mo. 223, the doctrine of the Murphy-De France case in that particular was exploded and we returned to the better early doctrine of the Rogers-Marsh and Kelsay-Frazier cases. If we have since the Anthony-Rice case reasserted the doctrine of the Murphy-De France case on that point, we are not aware of it.

As appellants threw off the burden put upon them by the law, we can not hold that Gilbert's homestead was acquired after the cause of action on the Taylor debt existed.

IV. There is left one other feature of appellants' brief, viz: It is suggested that as Gilbert died after the amendment of the homestead act in 1895, but acquired his homestead, and the Taylor debt accrued, while the amendment of 1875 was in force, the creditor had a vested right in the remedy as that remedy was

construed by this court to exist under the Act of 1875, viz: That the homestead itself might be sold by administration proceedings, subject to homestead rights. As to that we say:

In two cases it was ruled that the creditor had no such remedy under that act so long as homestead rights exist. [Broyles v. Cox, 153 Mo. 242; In re Estate of Powell, 157 Mo. 151.] But in Keene v. Wyatt, 160 Mo. 1, some of the doctrine of these two cases was repudiated, and we returned to that of an early case, Poland v. Vesper, 67 Mo. 727, which held that the creditor could, through an administration sale, sell the homestead subject to the homestead rights of the widow and minor children. But weighty and pertinent matter is found in the *per curiam* In Banc when the Keene-Wyatt case came there from division. (*Vide*, p. 9.) The Broyles-Cox case and Powell case dealt with a case like that at bar, to-wit, where the householder died after the Act of 1895 took effect. But in those cases there were *dicta* concerning the Act of 1875, which, if followed, would have overturned the early construction put upon the Act of 1875 in the Poland-Vesper case. In this condition of things the gist of the ruling In Banc in the Keene-Wyatt case was leveled at disapproving (not all, but) only those parts of the judgments in the Broyles-Cox and Powell cases which construed the Act of 1875. So far as those cases construed the Act of 1895, they were approved. Witness the *per curiam* itself:

"*Per Curiam.*—This case was sent by Division Two of its own motion to Court in Banc, because of its apparent conflict with some observations in the opinions of the court in Broyles v. Cox, 153 Mo. 242, and In re Powell's Estate, 157 Mo. 151.

"The facts which form the basis of this action occurred while the homestead law of 1875 was in force, and the case is of course governed by that law, while the facts which form the basis of the cases of

Broyles v. Cox, and In re Powell's Estate, supra, bring them within the provisions of the homestead law of 1875, 1879 and 1889, as amended by the Act of 1895, and in so far as the questions really involved in those cases are concerned, they are not in conflict with the case at bar, but the rulings in those cases to the effect that the homestead of a deceased housekeeper or head of a family, within the statutory size and limits, can not be sold under the homestead law of 1875, by an order of the probate court of the proper county, for the payment of the debts allowed against the estate of the deceased, subject to the homestead rights of the widow and minor children, are disapproved. With these suggestions, the foregoing opinion of BURGESS, J., in Division Two is approved, and adopted by the Court in Banc.''

The significance of that *per curiam* will be at once seen by comparing the statute of 1875 with that of 1895, and marking the alteration in the law. In 1875 the statute was made to read (and continued to read until 1895) as follows (R. S. 1879, Sec. 2693):

"If any such housekeeper or head of a family shall die, leaving a widow or any minor children, his homestead to the value aforesaid shall pass to and vest in such widow or children, or if there be both, to such widow and children, and shall continue for their benefit without being subject to the payment of the debts of the deceased, unless legally charged thereon in his lifetime, until the youngest child shall attain its legal majority, and until the death of such widow, and such homestead shall, upon the death of such housekeeper or head of a family, be limited to that period. But all the right, title and interest of the deceased housekeeper or head of a family in the premises, except the estate of the homestead thus continued, shall be subject to the laws relating to devise, descent, dower, partition and sale for the payment of

debts against the estate of the deceased, and the probate court having jurisdiction of the estate of the deceased housekeeper or head of a family shall, when necessary, appoint three commissioners to set out such homestead to the person or persons entitled thereto.''

In 1895 the foregoing section was, by amendment, made to read as follows (R. S. 1899, Sec. 3620):

''If any such housekeeper or head of a family shall die, leaving a widow or any minor children, his homestead to the value aforesaid shall pass to and vest in such widow or children, or if there be both, to such widow and children, and shall continue for their benefit without being subject to the payment of the debts of the deceased, unless legally charged thereon in his lifetime, until the youngest child shall attain its legal majority, and until the death of such widow; that is to say, the children shall have the joint right of occupation with the widow until they shall arrive respectively at their majority, and the widow shall have the right to occupy such homestead during her life or widowhood, and upon her death or remarriage it shall pass to the heirs of the husband; and the probate court having jurisdiction of the estate of the deceased housekeeper, or head of a family, shall, when necessary, appoint three commissioners to set out such homestead to the person or persons entitled thereto.''

It will thus be seen that after this court had held under the Act of 1875 that the homestead might be sold subject to the homestead rights of the widow and minor children, the lawmaker's attention was called to the great sacrifice that would result in such form of sale (*vide,* Showers v. Robinson, 43 Mich. 1. c. 508) and accordingly eliminated that part of the statute which this court had held authorized such sale by an administrator, and the question is whether a creditor has such vested right in that particular form of rem-

edy that the statute could not be changed (as to him) after his debt accrued. We do not think so.

.We have held that homestead rights vest in the widow and minor children on the death of the householder, or head of a family, and not before. That up to that time the wife of the householder had no vested right under any particular once existent but now non-existent amendment of the homestead law. Nor had the householder such vested right when called on to claim his exemption privilege. .[Bushnell v. Loomis, 234 Mo. 371.] How then in reason could we hold that the creditor had a vested right in some particular amendment, no longer in force when the householder dies, when the very persons for whose benefit the homestead act exists have no such vested right? That would be a *bouleversement* indeed. Under the doctrine of the Bushnell-Loomis case, we hold that the rights of creditors, as well as those of the widow and minor children, must be measured by the law in existence at the death of the householder.

It is needless to say we are not dealing with the right of a creditor whose debt existed before any homestead act was passed. We are dealing with a creditor that became such after a homestead law withdrew the homestead from the list of debt-paying assets, but gave a remedy in given conditions on his. debtor's death against his debtor's estate, and then. took the remedy away for reasons well grounded in. public policy.

It results from the premises that the judgment must be affirmed. It is so ordered. All concur. .