## ALLIE DENNIS et al., Appellants, v. W. H. GORMAN.

### Division One, July 11, 1921.

1. **HOMESTEAD ACT: Liberally Construed.** The homestead laws create a special statutory estate not governed by the general laws of descent and distribution. Their purpose was to afford a safe anchorage for a man and his wife and children against financial stress and storm, and accordingly are to be liberally construed in their favor and against creditors. But they cannot be construed beyond their evident intent.

2. **HOMESTEAD: By What Law Fixed.** The rights of the widow and children and of the creditors in the householder's homestead are fixed and determined by the law in force at the time of his death. Where he died October 15, 1907, the rights of his widow, children, grandchildren and creditors were fixed by the Act of 1907, which is the same as Section 6708, Revised Statutes 1909.

3. ————: **Sale by Probate Court: Collateral Attack.** Under the Homestead Act of 1895 (Sec. 3620, R. S. 1899) and the Homestead Act of 1907 (Sec. 6708, R. S. 1909), the probate court had no jurisdiction to order the homestead of a deceased householder to be sold to pay his debts not legally charged thereon in his lifetime, where

289 Mo.]                    (1)

he left a wife and surviving children; but such a sale was an absolute nullity and void, and being such it can be nullified in a collateral proceeding.

4. ———: ———: **Act of 1907.** The Homestead Act of 1907 (Sec. 6708, R. S. 1909) gave to the probate court no more jurisdiction to order the sale of the homestead of a deceased householder who left children him surviving than did the Act of 1895 (Sec. 3620, R. S. 1899). By the said Act of 1907, it is only in case the heirs of the husband "be persons other than his children" that the probate court has power or jurisdiction to order the sale of his homestead to pay debts not legally charged thereon in his lifetime. Not even when one of his heirs is a grandchild, there being children, can the homestead be sold; for the Act of 1907 means that it is only in case all the husband's heirs are "persons other than his children" that his homestead can be sold to pay his debts not expressly charged thereon in his lifetime.

5. ———: **Abandonment By Wife and Children: Sale to Pay Debts.** The fact that the widow and children left the homestead and moved to another county after the homesteader's death did not increase the jurisdiction of the probate court to order it sold to pay his debts not expressly charged thereon in his lifetime. The rights of his children become vested in them as remaindermen in fee upon his death, and there is nothing in the statute requiring them to continue to reside on the property or forfeit their title.

6. ———: **Grandchild: Right to Fee.** The householder having died leaving two children, one of them a minor, and a grandchild, and the statute saying that the homestead cannot be sold to pay debts if the heirs of the husband were "persons other than his children," the attempted sale of the homestead under orders of the probate court was void, not only as to the two children, but as to the grandchild as well.

7. ———: **Sale: Estoppel.** Where the children knew nothing of the administratrix's sale of the homestead, ordered by the probate court to pay decedent's debts, and received none of the proceeds, and the widow refused, as administratrix, to file a petition for its sale and it was filed by the creditors because of her refusal, the children are in no sense estopped to recover the homestead property, even though one of them was twenty-two years old at the time of her father's death, and the other twenty-two when the sale was made.

8. ———: **Conveyance by Widow: Quarantine.** A quit-claim deed by the widow of a deceased homesteader conveyed all her rights

therein, whether of homestead, dower or quarantine, and his children who had reached their majority continued to own the fee subject to the rights conveyed to her grantee. And if her homestead right has been extinguished by remarriage, the right to possession by the children, the youngest having become of legal age, is subject to the former widow's unassigned dower.

9. ———: Grandchild: Right to Occupancy. The minor grandchild of the deceased householder does not have the right of occupancy of his homestead jointly with his widow and children, even though she had been residing with him as a member of his family, her parents being dead. The right of occupancy is given by statute only to minor children of the householder, and that right ceases when the youngest reaches twenty-one years of age. But such grandchild has a remainder in fee in the homestead property as an heir of the homesteader.

10. ———: Conveyance by Widow: Occupancy by Children: Unassigned Dower. The right of the deceased householder's children to occupy his homestead, under the Act of 1907, ceased when the youngest of them reached twenty-one years of age, and where the youngest had reached that age at the time the widow conveyed her right and interests in the homestead, and she has since married, she no longer has a homestead right; but her grantee acquired her right of dower and quarantine until dower is assigned, and although the children are owners in fee their right to possession, the younger having reached legal age, is subject to the dower and quarantine of the former widow until dower is assigned.

Appeal from Wright Circuit Court.—*Hon. C. H. Skinker,* Judge.

AFFIRMED (*in part*); REVERSED AND REMANDED (*in part, with directions*).

*George W. Goad* for appellants.

(1)   Under the homestead law of 1895 the homestead tract could not be sold by the administrator of the deceased householder to pay the general debts of his estate. Broyles v. Cox, 153 Mo. 242; In re Powell's Estate, 157 Mo. 151; Kenne v. Wyatt, 160 Mo. 1; Balance v. Gordon, 247 Mo. 119; Armor v. Lewis, 252 Mo. 568; Ehlers v. Potter, 219 S. W. 915.   (2)   Under the home-

stead law of 1895 the homestead tract could not be sold
to pay the general debts of the deceased householder,
even after the death or remarriage of the widow, and
the majority of the minor children, in which event the
homestead tract passed in fee to the heirs of such de-
ceased householder free from debts not charged thereon
in his lifetime. Street v. McCune, 148 Mo. App. 700;
New Madrid Banking Co. v. Brown, 165 Mo. 39; Balance
v. Gordon, 247 Mo. 119; Armor v. Lewis, 252 Mo. 568;
Ehlers v. Potter, 219 S. W. 915. (3) The homestead
law of 1895 was amended in 1907 by adding thereto a
specific prohibition against the sale of the homestead
tract for payment of the debts of the deceased house-
holder, unless such debts were charged thereon during
his lifetime, which amendment was a complete recog-
nition and adoption of the construction of the court
of the 1895 law, and applies to the case at bar. R. S.
1909, sec. 6708. (4) The probate court was without
jurisdiction in ordering and approving said sale. Such
orders were not final judgments. The sale was void,
no title passed thereby and is open to attack in this
proceeding. Balance v. Gordon, 247 Mo. 119; Armor
v. Lewis, 252 Mo. 568; Ehlers v. Potter, 219 S. W. 915.
(5) The homestead rights of the children cannot be im-
paired by abandonment by the widow. Phillips v. Pres-
son, 172 Mo. 24. (6) The word "children" as used in
the 1895 homestead law and the 1907 amendment should
be construed to include grandchildren, especially as in
this case, where the grandchild is an orphan, lived with,
was supported by and a member of the family of the de-
ceased householder. Werne v. Large, 258 Mo. 163; Ken-
ny v. McVoy, 206 Mo. 42; Moran v. Stewart, 122 Mo. 295;
In re Williams Estate, 62 Mo. App. 339.

*J. W. Jackson* and *Lamar & Lamar* for respond-
ent.

(1) At the time of the sale the widow had con-
veyed her right by deed, had moved to Springfield and

established a home. The two children were both of age, the oldest twenty-eight and the youngest twenty-two, at the date of the sale. The grandchild, Leon England, is not a beneficiary of this homestead statute. (a) "Children" as used in the statute providing for a homestead for the widow and children, does not include "grandchildren," although such grandchild may have been supported by the decedent as part of his family. 11 C. J. 751 (2) B; 21 Cyc. 569, sec. 2, note 49; Peeler v. Peeler, 68 Miss. 141; Wilkins v. Briggs, 48 Tex. Civ. App. 598, 107 S. W. 140; Clements v. McKa, 110 S. W. 185; Brown v. Brown, 104 Ark. 313, 149 S. W. 330. (b) The word 'children" both in the popular and in the technical sense means descendants in the first degree, and does not include "grandchildren." 1 Boutvier's Law Dictionary on "Children" (15 Ed.) p. 310; Von Behrn v. Stoeppelmann, 226 S. E. 875; Lich v. Lich, 158 Mo. App. 413; Starrett v. McKim, 119 S. W. (Ark.) 824; Walker v. Vicksburg Ry. Co., 34 So. 749; Thomas v. Thomas, 53 So. (Miss.) 633; Palmer v. Horn, 84 N. Y. 516; Walter v. Truslow, 35 N. E. 955; Brown v. Brown, 98 N. W. (Neb.) 718. (c) Not only is the benefit of a homestead statute limited to children as thus defined— that is, descendants in the first degree—but the benefits of homestead to such children is not extended after majority, by reason of such child after majority being a dependant female or an imbecile. 21 Cyc. 586, notes 64 and 65. (2) At the time of the execution of the deed by the widow on April 8, 1913, both the children were more than twenty-one years of age, the youngest being then twenty-two. If the widow had any homestead, she had a perfect right to sell and convey such homestead, and by such deed this right passed to respondent Gorman, the grantee in such deed. Mark v. Heiss, 90 Mo. 578; Phillips v. Pearson, 172 Mo. 28. (3) Having conveyed her homestead, if she had any, to respondent before the administrator's sale, and the children being of age, there was no homestead when the land sold.

There being no person entitled to homestead in the premises at the time this action was filed or at the time of the sale, no cause of action existed in favor of any person. Wilson v. Wilson, 255 Mo. 535; Denk v. Fiel, 249 Ill. 424; Londen v. Martindale, 67 N. W. 133. (4) Judgments of probate courts in administration matters are entitled to all the presumptions that attach to judgments of courts of general jurisdiction. One who is a party to an action in the probate court in which the right of homestead is available as a defense must interpose this defense, and if he fails to do so, the judgment rendered in such suit will bar his subsequent assertion of such right. 21 Cyc. 619; Wilson v. Wilson, 255 Mo. 528, 536; 18 Cyc. 797; Smith v. Black, 231 Mo. 690; McDonald v. McDonald, 242 Mo. 176; Desloge v. Tucker, 196 Mo. 587, 601; Higbee v. Bank, 244 Mo. 411, 424; Harter v. Petty, 266 Mo. 296, 303; Robbins v. Boulware, 190 Mo. 51; Covington v. Chamberlin, 156 Mo. 574; Sigmond v. Bebber, 73 N. W. (Ia.) 1027; Doran v. Kennedy, 141 N. W. (Minn.) 851; Doran v. Kennedy, 237 U. S. 362; Stone v. Elliott, 106 N. E. (Ind.) 710; Reinhart v. Seaman, 69 N. E. 847; Jarrell v. Cole, 215 Fed. 315. (5) The filing of a proper petition gives the probate court jurisdiction of the land, and notice to the parties in interest gives jurisdiction of the person. Grayson v. Weddle, 63 Mo. 523, 537; Pattel v. Thomas, 58 Mo. 163, 173; Overton v. Johnson, 17 Mo. 442, 450. (6) Administrator's sales (and all judicial sales for that matter) will be liberally construed. Tutt v. Boyer, 51 Mo. 425, 430; Thompson v. Pinell, 199 S. E. 1012; Noland v. Barrett, 122 Mo. 181, 190. (7) In order for a judicial sale to be subject to collateral attack, as sought in this case, the lack of jurisdiction must appear from the face of the record. Covington v. Chamberlin, 156 Mo. 574; Robbins v. Boulware, 190 Mo. 33, 52. (8) It will not be disputed that an appeal lies both from the judgment of the probate court, ordering the sale of the land, and from the final judgment approving the sale. Desloge

v. Tucker, 196 Mo. 587; Tutt v. Boyer, 51 Mo. 425, 430; Thompson v. Pinell, 199 S. W. 1011; Price v. Realty Assn., 101 Mo. 107, 118; Rogers v. Johnson, 125 Mo. 202, 215; 18 Cyc. 794.

SMALL, C.—Appeal from the Circuit Court of Wright County. Suit to quiet title to ninety-five acres of land in said county. The petition is in the regular form to quiet title at law; it also contains a second count in ejectment.

The answer, besides a general denial, after admitting possession and claim of ownership, sets up that defendant purchased the property at a sale made by the administratrix of the estate of George Manear at the February term, 1913, of the probate court of said county, to pay the debts of the deceased, under due and regular orders and proceedings after due notice to all parties interested in said estate, including plaintiffs, who were personally served with notice of such proceedings by the sheriff as required by law. That at such sale the defendant was the highest and best bidder and purchased the property for $880, which he paid to the administratrix and received a regular administratrix's deed therefor. That said sale was duly confirmed and is binding upon the plaintiffs as *res adjudicata,* and the orders and judgment of said court are pleaded in bar of all claims of the plaintiffs. It is further alleged, by way of estoppel, that the said estate received the benefit of the money paid by defendant, and defendant afterwards took possession and made valuable improvements upon said land with the knowledge and consent of plaintiffs.

The reply put the allegations of the answer in issue.

There is substantially no dispute as to the salient facts. The plaintiffs, Allie Dennis and Marie Hearold, are the children, and the minor plaintiff, Leon England, is the grandchild, and they constitute the only heirs of George Manear, who died October 15, 1907. At and

a number of years before his death, he was the owner of the land and occupied it with his family as a homestead. It did not exceed $1500 in value. His family, when he died, consisted of the plaintiffs, and his wife, Laura Manear. The widow was appointed administratrix in 1908, but failing and refusing to apply for and procure an order of sale to pay debts proved up against the estate, the creditors filed such petition, and after the order of sale was made in 1911 and renewed for several terms, the property was sold at the February term, 1913, and defendant became the purchaser. The proceedings were all regular, in the usual form for the sale of real estate of the deceased to pay his debts. The plaintiffs did not appear at any stage of the proceedings or take any notice thereof. The debts for which the land was sold were not charged against it in the lifetime of the decedent, and were not contracted before the homestead was acquired. About a year before the sale, or in 1912, the widow and two daughters and granddaughter, who up to that time continued to reside on the homestead, removed to Springfield, Missouri, where they resided at the time of the sale. The children and grandchild received none of the proceeds of the sale, so far as shown by the evidence, and had no knowledge of its occurrence. But $250 of such proceeds was paid "back on the land," by the administratrix. Just before the sale, the widow by quit-claim deed, dated April 8, 1913, sold and conveyed all her interest in the property to the defendant for $1,160. At the time of their father's death, one of his daughters was twenty-two years of age, the other sixteen, and said grandchild was an infant of tender years and was a minor when this suit was brought. The widow, in testifying, said her name was Laura Hendricks, at the time she testified.

The lower court found the issues for the defendant on both counts of the petition, and refusing a new trial, the plaintiffs brought the case here by appeal.

The principal question on this appeal submitted by counsel on both sides, is whether, on the foregoing facts, the said administratrix's sale was absolutely void and subject to collateral attack. There are some minor questions also which will be noticed in the opinion.

I. Our homestead laws create an estate unknown to the common law. It is a special statutory estate not governed by the general laws of descent and distribution. The

Sale of
Homestead:
Act of 1895:
Collateral
Attack.

purpose of such legislation was to afford a safe harbor and anchorage for a man and his wife and children against financial stress and storm, and is accordingly to be liberally construed in their favor and against creditors to promote its beneficent purpose. [Balance v. Gordon, 247 Mo. l. c. 124.]

The law in this State was first enacted in 1862 (Laws 1862-3, p. 22), and changed from time to time since its first enactment. The various statutes and the history of the Homestead Act have been so repeatedly set out in the decisions of this court that it is sufficient for us to refer to the statutes on the subject directly bearing upon and governing this case. Section 2 of the Homestead Act of 1895 (Acts 1895, p. 185) being afterwards incorporated in Revised Statutes 1899, as Section 3620, was as follows:

"If any such housekeeper or head of a family shall die leaving a widow or any minor children, his homestead to the value aforesaid shall pass to and vest in such widow or children, or if there be both, to such widow and children, and shall continue for their benefit without being subject to the payment of the debts of the deceased, unless legally charged thereon in his lifetime, until the youngest child shall attain its legal majority and until the death of such widow; that is to say, the children shall have the joint right of occupation with the widow until they shall arrive at their majority, and the widow shall have the right to occupy such homestead

during her life or widowhood, and upon her death or remarriage it shall pass to the heirs of the husband; and the probate court having jurisdiction of the estate of the deceased housekeeper, or head of a family, shall, when necessary, appoint three commissioners to set out such homestead to the person or persons entitled thereto. [R. S. 1889, sec. 5439, Amended Laws 1895, p. 185-c.]''

Said Section 3620, Revised Statutes 1899, was subsequently changed by the Act of 1907 (Laws 1907, p. 301), afterwards Section 6708, Revised Statutes 1909, by making the joint right of occupancy of the widow and children continue until all the children were twenty-one years of age, and expressly authorizing sale of the homestead for the general debts of the decedent, in cases where his heirs ''be persons other than his children,'' by adding to the Law of 1895 the following: *''Provided, that if the heirs of the husband be persons other than his children, then such homestead may be sold for the payment of any debt or debts legally established against his estate, subject to the rights of the widow. Such sale in either case may be made at any time during the course of administration of the husband's estate, and to be conducted in like manner and the same proceedings had as is or may be provided by law for sales of other real estate for the payment of the debts of deceased persons.''*

It is firmly established that the rights of the widow and children and the creditors are fixed and determined by the law in force when the husband dies. [Bushnell v. Loomis, 234 Mo. 384-5; Balance v. Gordon, 247 Mo. 131.]

So that George Manear, having died October 15, 1907, the Act of 1907 was then in force and the rights of the parties hereto must be determined by that act or said Section 6708, Revised Statutes 1909. Under the said Section 3620, Revised Statutes 1899, it has been uniformly held that the probate court has no power to sell

the homestead for the debts of the deceased, because the statute prohibited such sale and vested the title in the widow and children and heirs free from the claims of creditors of the deceased, and, in effect, holding that the homestead is no part of the decedent's estate and is not subject to the jurisdiction of the probate court in administering his estate. [Broyles v. Cox, 153 Mo. 242; In re Powell's Estate, 157 Mo. 156; Balance v. Gordon, 247 Mo. 127; Armor v. Lewis, 252 Mo. 574; Ehlers v. Potter, 219 S. W. 916; In re Boward v. Boward, 288 Mo. 148, 231 S. W. 600.]

It is true, that the question did not arise collaterally in all the above cases, but it did arise collaterally in Balance v. Gordon, 247 Mo. 119, and Armor v. Lewis, 252 Mo. 568, and the point was urged by counsel, as shown by their briefs in the Armor Case, that if the probate court had jurisdiction over the subject-matter and the parties, its judgment ordering the sale could not be absolutely void and subject to collateral attack. But the court necessarily ruled that the said court had no such jurisdiction to sell the homestead, which was the subject-matter of its action.

In the Armor Case, supra, l. c. 582, the court, per LAMM, J., said: "It must be taken as assumed that it could not be contended for a moment that the probate court had any jurisdiction to order the sale of the homestead in contravention of the Homestead Statute." And on page 576, the learned Judge observed: "We shall not overrule the Broyles-Cox, the Powell and the Balance-Gordon cases. *Stare decisis.*" All of which cases held, that the probate court had no power to sell the homestead for debts of decedent.

This court very recently had occasion to review its prior decisions, and especially the Armor Case, supra, and the cases therein relied upon, and has construed them as holding that a sale of the homestead by the probate court under the Act of 1895, was without jurisdiction and subject to collateral attack as absolutely null

and void. [In re Ehlers v. Potter, 219 S. W. 916; In re Boward v. Boward, 288 Mo. 148, 231 S. W. 600, decided this term of court, in which it is said, such sale is "*coram non judice*."]

So, under the law as it stood in Wag. Stat., sec. 5, chap. 58, when the homestead was vested in fee in the widow with a joint right of occupancy in the children until majority, this court held that the orders and judgment of the probate court authorizing the administrator to sell and confirming the sale of the homestead for debts of the husband were absolutely void in collateral proceedings. [Lewis v. Barnes, 272 Mo. 377; Rogers v. Marsh, 73 Mo. 64; Anthony v. Rice, 110 Mo. 223.] In the case last cited, the widow appeared and contested in the probate court the application of the administrator for such order of sale, but took no appeal from the adverse judgment of the probate court, notwithstanding which, this court held the proceedings void for want of jurisdiction in the probate court. The Rogers Case and the Anthony Case are also referred to with approval in Balance v. Gordon, 247 Mo. supra, at page 127.

So that, without reference to the authorities from other jurisdictions cited by learned counsel for respondent, we hold that it is the settled law in this State that under the said Act of 1895, and afterwards up to the taking effect of the Act of 1907, the probate court had no jurisdiction over the subject-matter when it attempted to sell the homestead of the decedent for his debts, and any such sale was an absolute nullity and void upon collateral attack.

II. Did the Act of 1907 (Sec. 6708, R. S. 1909), in case the decedent left children him surviving, give the probate court any more or other jurisdiction than the Act of 1895? Obviously, not. It is on-

*Act of 1907; Heirs Other Than Children.* ly in case the heirs of the husband "*be persons other* than his children," that the probate court has power or jurisdiction to

make such sale under the Act of 1907. In this case, the husband's heirs were his children and his grandchild. So that it cannot be said that his heirs were "persons other than his children." The statute of 1907 means that only in case all the husband's heirs are "persons other than his children" can the homestead be sold for his debts not expressly charged thereon in his lifetime, which is not claimed was the case here. If he left *any* children as his heirs, it cannot be said that his heirs were "persons other than his children." Any other construction would be a "sour" construction of the statute, which this court, per LAMM, J., said, in the Armor Case, supra, was not admissible.

We rule, therefore, that the administratrix's sale in question here was an absolute nullity for want of jurisdiction in the probate court over the subject-matter of such sale, and as such is subject to collateral attack.

III. Nor is it material that the widow and two daughters and grandchild of George Manear left the homestead after his death and changed their domicile to Springfield, Missouri, where they resided when such sale was made. The rights of his children and heirs as remaindermen in fee became vested in them upon the death of the householder, and there is nothing in the statute requiring them to continue to reside on the property or forfeit their title. The case of Wilson v. Wilson, 255 Mo. 528, is beside the point, because under the statute passed on in that case, a statute prior to the Act of 1895, the heirs had no fee in remainder.

Abandonment.

IV. Under the statute of 1895, as amended in 1907, the remainder in fee passed to the heirs, all the heirs of the deceased husband. This would vest an undivided one-third in the grandchild in this case. Said one-third was not subject to the sale made by the administratrix, although said minor was not the child of the decedent, because, as we have just ruled, the homestead could not be sold by the

Right of Grandchild.

probate court for the decendent's debts unless all his heirs were "persons other than his children," which was not the case here.

V. The estoppel pleaded in the answer is not urged in this court by learned counsel for respondent, no doubt, because the facts in the record show the children knew nothing of the administratrix's sale and received none of the proceeds, and the widow refused, as administratrix, to file petition for the making of such sale, which was made upon petition filed by the creditors because she did so refuse. Obviously, there was no estoppel against the plaintiffs in this case.

*Estoppel.*

VI. We rule, therefore, that the plaintiffs, as heirs of said George Manear, deceased, own the fee in the land in dispute, subject to the rights that were conveyed to the defendant by the quit-claim deed of the widow. This deed conveyed all her rights, whether of homestead, dower or quarantine, in the property to the defendant. [Phillips v. Presson, 172 Mo. 24.]

*Deed of Widow.*

VII. Did the minor child, Leon England, have right of joint occupancy with the widow and daughters of the deceased until she was twenty-one years of age? We think not. While the statute is entitled to a most liberal construction, it cannot be construed beyond the intent of the Legislature. [Regan v. Ensley, 283 Mo. 297, 222 S. W. 773.] We do not think that grandchildren come within the intent of the Legislature as the children who would have a joint right of occupancy of the homestead with the widow until they are twenty-one years of age—even although they had been residing with the decedent as members of his family, their parents being dead, as in this case. It was only the *minor* children of the householder who were to have any such right of occupancy, and this was to cease when they reached the age of twenty-one years. This shows, that even all of the householder's own children were not to be beneficiaries

*Right of Occupancy: Grandchild.*

in such joint tenancy, and it was to be limited to his "minor children," and that such words were used in their ordinary and primary meaning. The words "minor children" have been construed in the following cases in other jurisdictions, and we concur in the construction, not to include "minor grandchildren," in similar provisions in homestead acts, although they were dependent members of the householder's family, at the time of his death: Peeler v. Peeler, 68 Miss. 141; Wilkins v. Briggs, 48 Tex. Civ. App. 598; Clements v. Maury, 110 S. W. 185; Brown v. Brown, 104 Ark. 313. Consequently, the minor plaintiff, Leon England, had and has no joint right of occupancy as a minor child of the decedent until she is twenty-one years of age, but her right is limited to her remainder in fee as an heir of the decedent.

VIII.  It appears that both of the plaintiffs, Allie Dennis and Marie Heareld, were more than Right of Occupancy: Children. twenty-one years of age when the administratrix's deed was made, which was the *5th* day of May, 1913. Their right of joint occupancy, therefore, as minor children of the deceased, had expired long before this suit was brought, which was July 5, 1919.

IX. The widow having remarried since her husband's death, as we assume from her testimony that her name Dower Until Assignment. was Laura Hendricks at the time of the trial, the defendant has no right to possession of said property, as the grantee of the widow's homestead right, because that expired with her remarriage, under the statute.

But defendant also acquired the widow's right of dower and quarantine by his deed from her, which gave him a right of possession to said property until said dower is assigned. [Phillips v. Presson, 172 Mo. supra.] Such dower and the assignment thereof are expressly provided for by the Homestead Act in force on October 15, 1907, when George Manear died. [Sec. 6708 and 6710, R. S. 1909.]

The result is, the judgment of the circuit court on the second count of the petition, is affirmed, but is reversed as to the first count, the count to quiet title, and remanded with directions to the circuit court to enter judgment on said first count, declaring that plaintiffs are the owners in fee simple of the property described in the petition, subject to the dower and quarantine rights of said former widow of George Manear, deceased, which are owned by the defendant, all in accordance with the views expressed in this opinion. *Ragland, C.,* concurs; *Brown, C.,* not sitting.

PER CURIAM:—The foregoing opinion by SMALL, C., is adopted as the opinion of the court. All of the judges concur.