## ANN ARMOR et al., Appellants, v. J. T. LEWIS et al.

In Banc, November 24, 1913.

1. **INSTRUCTIONS: In Suits to Quiet Title: Office.** Whether the suit to try and determine the title under -Sec. 2535, R. S. 1909, be considered one at law or in equity, instructions fill no office on appeal where the case was tried before the court, and the facts and judgment sufficiently indicate the trial theory.

2. **HOMESTEAD: Sale During Course of Administration: Subject to Rights of Widow and Minors: Act of 1895.** The Homestead Act of 1895 was construed in Broyles v. Cox, 153 Mo. 242; In re Estate of Powell, 157 Mo. 151, and Balance v. Gordon, 247 Mo. 119, to mean that land subjected to homestead cannot be sold in course of administration to pay debts of decedent, where such debts were created subsequent to the acquisition of the homestead and not charged thereon in the lifetime of the deceased householder; and that holding has never been departed from, and is reannounced as *stare decisis*. The homestead cannot be sold by the administrator by order of the probate court, "subject to the homestead rights of the widow and minor children," to pay general debts of the deceased householder created after the homestead was acquired. Held, by BOND, J., dissenting, that the purpose of the Homestead Act was to provide a home for the widow and minor children after the householder's death, and that purpose is not defeated nor their rights impaired by a sale of the homestead tract subject to the rights of the widow and minor children to a homestead therein.

3. ————: ————: ————: ————: **Whether Devisees or Heirs.** Nor is it material whether the minor children are devisees or heirs by descent cast. As to a creditor, a devisee does not stand on a better foot than an heir. A will does not affect the right of a creditor of the deceased householder, dying testate, to have his debt paid out of testator's property. The devisee takes with the statutory burden precisely as does the heir. The case of Balance v. Gordon, 247 Mo. 119, which held in judgment the right of a devisee in testator's homestead, cannot on principle be distinguished by that fact from this, in which the homestead rights of minor heirs are involved.

4. ————: **Statute Exception to Descents.** The homestead acts are codes unto themselves as complete and rounded legislation, and being ·later acts are an exception to the Statute of

Descents and Distribution, and have always been so considered; and courts look to them to determine whether a homestead tract can be sold in the course of administration to pay debts. The probate court has no authority to order the sale of a homestead in contravention of the homestead statute.

Held, by BOND, J., dissenting, that the Homestead Act of 1895 does not contain any express provision protecting the homestead tract from sale, to pay decedent's debts, subject to the homestead rights of the widow and minor children therein, and is not in that respect an exception to the Statute of Descents, and the court has no authority to read any such exception into it.

5. ————: Fee: Indivisible. The homestead and fee are not two separable and divisible interests. They must be kept together.

Held, by BOND, J., dissenting, that the homestead is a determinable life estate in the widow and an estate for years in the minors, which the Homestead Act simply exempts from execution or sale during their continuance, but it does not protect the vested remainder which takes effect as a fee when the widow and minor children have lost their right. That vested remainder is subject to the Statute of Descents and Distribution, and, like a vested remainder in any other of decedent's or testator's lands, may be sold to pay his debts.

6. ————: Sale of Fee Subject to Widow's and Minors' Rights: Estimation of Value: Competition: Amendment of Statute. The value and duration of the homestead estate of minor children may be estimated with some degree of certainty, but that of the widow often cannot, because, aside from the fact it may last the balance of her life, it may be terminated as to her by a remarriage. Thus an element of uncertainty would accompany any sale of the homestead tract subject to the homestead rights of the widow and minor children, which would usually lead to its sacrifice; and it was likely that which induced the Legislature to omit from the amendatory Act of 1895 the words in the Act of 1875 declaring that all the interest and title of the deceased shall be subject to the laws relating to devise, descent, dower, partition "and sale for the payment of debts against the estate of the deceased."

Held, by BOND, J., dissenting, that the suggestion that a sale of the fee in remainder would cause a sacrifice of the property to the ultimate owners cannot have any force, because (1) it was not the purpose of the Homestead Act to do other than protect the homestead estate itself, and that estate can in no wise be diminished nor its full enjoyment impaired by the sale of the estate which follows it; and (2) because the Legislature could not have intended to protect from sale those vested remainders following

Armor v. Lewis.

homesteads when it has not so protected any other re-
mainders, but made them subject to sale to pay decedent's
debts, and the Homestead Act of 1895 is entirely silent on
the subject of their sale.

7. ———: ———: Amendment of a Statute: Rule of Construction.
The state of the old law, the mischiefs arising thereunder and
the remedies provided therefor in the new law, is the can-
onized touchstone of interpretation of amended statutes. The
purpose of the amendment of the Homestead Act of 1895 which
omitted the words subject to "sale for the payment of debts
against the estate of deceased" was to prevent the sale of the
homestead in the course of administration to pay decedent's
debts, and to prevent the sacrifice of the homestead tract, and
to legislatively declare that the creditor has no interest in a
homestead acquired before his debt was created.

*Held,* by BOND, J., dissenting, that the words in the Act of
1875 declaring that "all the right, title and interest of
the deceased housekeeper in the premises, except the
estate of the homestead thus continued, shall be subject
to the laws relating to devise, descent, dower, partition
and sale for the payment of debts against the estate of
deceased," were inserted to meet the decision in Skouten
v. Wood, 57 Mo. 380, interpreting the Act of 1865, which
in terms provided that "such widow and children, re-
spectively, shall take the same estate therein of which
the deceased died seized," and therefore prohibited the
sale of the homestead tract to pay decedent's debts; but
those words contained in the Act of 1875 were not re-
inserted in the Act of 1895, and the silence of that act
cannot be held to operate as a repeal of the Statute of
Descents and Distribution. Statutes can be repealed in
only one of three ways, namely, by express terms, by
repugnancy or by a substituted act covering the entire
subject. The Homestead Act of 1895 and the older Statute
of Descents are entirely harmonious and reconcilable, and
there is nothing found in either that prohibits the sale
of the fee in remainder to pay decedent's debts, subject
to the homestead estate of the widow and minor children.

8. ———: Sale Under Execution and After Death. The creditor
cannot sell the homestead tract on *fi. fa.,* subject to the home-
stead right, while the homestead exists and the householder
lives; nor can he have it sold in the course of administra-
tion after the householder's death, subject to the homestead
rights of the widow and minor children. The homestead, at
all times, is forbidden fruit to the creditor.

Appeal from Crawford Circuit Court.—*Hon. L. B.
Woodside,* Judge.

AFFIRMED.

*A. H. Harrison, A. S. Cowden* and *Neville & Gorman* for appellants.

The law of 1895 left the remainder after the homestead subject to the payment of the homesteaders' debts. Broyles v. Cox, 153 Mo. 242; In re Powell's Estate, 157 Mo. 151. Under the Law of 1875 the probate court could sell the remainder after homestead before the expiration of homestead. Keene v. Wyatt, 160 Mo. 1, overruling Broyles v. Cox, 153 Mo. 242, and In re Powell's Estate, 157 Mo. 151; Robbins v. Boulware, 190 Mo. 33; Balance v. Gordon, 247 Mo. 119. After the death of the homesteader the widow and minor children take a fixed and definite estate inseparable and inseverable—the widow an estate for life, to be defeated by remarriage; the minors each an estate for years, with duration till their respective majorities. This leaves a remainder subject to sale at once for payment of debts the same as that of any other reversionary estate. Brewington v. Brewington, 211 Mo. 48; White v. Spencer, 217 Mo. 242; Black v. Epstein, 221 Mo. 286. The proceedings of the probate court, when acting within its jurisdiction, are unimpeachable collaterally, are conclusive, and are entitled to the same presumptions and force as courts of general jurisdiction and although error may be committed, yet after final order approving sale and deed thereunder the title passes and it is not subject to collateral attack. Covington v. Chamberlain, 156 Mo. 574; Cox v. Boyce, 152 Mo. 576; Rogers v. Johnson, 125 Mo. 202; Macey v. Stark, 116 Mo. 481; Sherwood v. Baker, 105 Mo. 472; Price v. Springfield, 101 Mo. 107; Camden v. Plain, 91 Mo. 117; Rowden v. Brown, 91 Mo. 429; Ferrix v. Ferrix, 80 Mo. 27; Henry v. McKerlie, 78 Mo. 416; Johnson v. Beasley, 65 Mo. 251.

*Harry Clymer* for respondents.

The law governing the homestead rights of the widow and children of a homesteader is that in force at the date of the death of the husband and father. Register v. Hensley, 70 Mo. 194; Burgess v. Bowles, 99 Mo. 547; Ailey v. Burnett, 134 Mo. 313; Bushnell v. Loomis, 234 Mo. 284; Keene v. Wyatt, 160 Mo. 9. The law in force at the date of the death of John W. Lewis was the Act of 1895, and under this law the land comprising the homestead was not subject to sale at all for debts of the deceased homesteader, unless legally charged thereon in his lifetime. Sec. 3620, R. S. 1899; Broyles v. Cox, 153 Mo. 242; In re Powell's Estate, 157 Mo. 151. The Broyles case and the Powell case have never been overruled, in so far as they construe the Homestead Law of 1895. In the Keene case, decided by Court in Banc, the law construed was the Homestead Law of 1875. Keene v. Wyatt, 160 Mo. 9. The facts which form the basis of the Robbins case, 190 Mo. 1, arose under the Law of 1875, which was materially different from the Act of 1895, in so far as the right to sell the homestead was concerned, and there is really no conflict between the Robbins case and the Broyles and Powell cases. To make this sale by the administrator to pay debts of the deceased valid, it must be shown that the debts were contracted before the homestead right of John W. Lewis was acquired, and the burden of showing this rested upon the appellants. Rogers v. March, 73 Mo. 69; Kelsay v. Frazier, 78 Mo. 114; Anthony v. Rice, 110 Mo. 229. If, as this court held in the Broyles and Powell cases, supra, this land was not subject to sale under the Law of 1895, then the probate court had no jurisdiction to order the sale; and if it had no jurisdiction to order the sale, its judgment was absolutely void and the deed thereunder conveyed no title. This doctrine is so well established in this State that no citation of authority is

necessary in support of it. The cases cited by appellants on the question of jurisdiction are cases in which the court had jurisdiction to make the order it made, and in which the orders and judgments were questioned on account of some irregularity appearing in the record.

LAMM, C. J.—Plaintiffs are heirs and descendants and devisees of deceased heirs of S. H. Headlee, deceased. Some of defendants are children and heirs and some husbands of daughters of John W. Lewis, deceased. The suit, one to determine and adjudge title to real estate in Crawford county, is bottomed on former section 650, now Section 2535, Revised Statutes 1909.

Attend to the facts and circumstances: In November, 1896, John W. Lewis died seized of the farm in dispute as a homestead, with other land not subject to homestead, leaving a widow and six minor children. In 1899, by a proceeding in the probate court, a homestead was carved out of said lands, appraised and set off to said widow and six minors. From thence on things moved off at a smartish pace; for one year later Sweyers, administrator of Lewis, by a proceeding in the same probate court got an order to sell and did sell said homestead, "subject to the homestead rights of the widow and minor children," to pay claims allowed against the estate.

(*Note*: The record shows the indebtedness did not accrue before the acquisition of the homestead by decedent.)

At that sale S. H. Headlee, one of the creditors, purchased for $75 and received an administrator's deed. In 1901 the widow died, the children continuing to reside on the homestead. In 1909, the date of the judgment in the instant case, two of them were yet minors and four had attained their majority. Both the proceedings to set off homestead and sell for debts

were in form, hence details are unimportant. The issue below hinging on the efficacy of that deed to convey. title, the pleadings were appropriate to that issue and need no further attention.

The trial court held that, under the facts stated, the homestead could not be sold in course of administration to pay debts at large not created before the acquisition of the homestead. Plaintiffs appealing, the question is: Under the Homestead Act of 1895, was the sale valid and did the administrator's deed convey title?

Instructions were given for defendants in accord with (and refused for plaintiffs against) the theory of the judgment. We have been inclined to view suits to declare and adjudge title under old section 650 as of an equitable nature, except where the issue was title by limitations, accretions or the like. [Peniston v. Brick Co., 234 Mo. l. c. 709.] If, then, the suit was in equity instructions fill no office. If at law, then the office of instructions was merely to indicate the trial theory of the court. In any event, to determine the cause on appeal we need pay no attention to them, because the facts and judgment sufficiently indicate the trial theory.

We are of opinion the judgment should be affirmed both on authority and reason.

(a) *On authority*, because the Homestead Act of 1895 has been construed to mean that land subjected to homestead cannot be sold in course of administration to pay debts of a decedent, where such debts were created subsequent to the acquisition of the homestead and not charged thereon in the lifetime of the deceased householder. [Broyles v. Cox, 153 Mo. 242; In re Estate of Powell, 157 Mo. 151; Balance v. Gordon, 247 Mo. 119.] That construction has never been departed from, hence those cases must either be overruled or the point be held against appellants.

Homestead: Sale to Pay Decedent's Debts.

True it is that a supposition has been indulged (sometimes arising to the dignity of an impression) that the authority of the Broyles-Cox and Powell cases has either been shaken or exploded by later cases, but, as held in the Balance-Gordon case, that impression is an airy nothing without substance. This becomes apparent when we consider Keene v. Wyatt, 160 Mo. 1, and its *per curiam* in Banc. [p. 9, *quod vide.*] In Poland v. Vesper, 67 Mo. 727, it was held that, because of the peculiar wording of the Homestead Act of 1875, a homestead might be sold in course of administration to pay debts, subject to existing rights of the widow and minor children. Now, the Broyles-Cox and the Powell cases arose on sales made after the Act of 1875 was repealed and while the Act of 1895 was in force. Therefore, the latter act was alone held in judgment in those cases. However, the court in deciding them discussed the Act of 1875 and announced *obiter* doctrines *contra* to the holding in the Poland-Vesper case. When the Keene-Wyatt case was here our attention in Banc was called to that condition of things and we repudiated so much of the opinions in the Broyles-Cox and Powell cases as construed the Act of 1875 *contra* to the holding in the Poland-Vesper case, returning to and reaffirming its doctrine as a sound construction of the Act of 1875. [Robbins v. Boulware, 190 Mo. 33.] But, observe, the Banc *per curiam* in the Keene-Wyatt case left those cases as authority so far as they construed the Act of 1895. We so held in the Balance-Gordon case.

In addition to what is held of set purpose in the Balance-Gordon case in that regard (and after full consideration) the explanatory remarks of VALLIANT and MARSHALL, JJ., in New Madrid Banking Company v. Brown, 165 Mo. l. c. 39, throw a clear light on the question and may be consulted with profit.

We shall not leave this branch of the case without a further observation, viz.: It was suggested (in the

original opinion of Bond, J., in the instant case, to which Division One did not agree), that the Balance-Gordon case may be differentiated or distinguished in principle from the one at bar. But I am unable to agree to the ground of differentiation, running after this fashion, viz.: That case held in judgment the rights of a devisee, whereas this holds in judgment the rights of heirs by descent cast. Suppose that be so, what legal principle is involved in the difference of fact? How can that inconsequential fact take this case out of the doctrine of the maxim: Concerning similars the judgment is the same?

When well looked to, in principle it must be certain that if the case at bar is to be ruled for appellants, then the Balance-Gordon case was badly ruled; for has it ever been held by any respectable court that, as to a creditor, a devisee stands on a better foot than an heir? Does a will, *qua* will, touch or in aught affect the right of a creditor of the deceased householder, dying testate, to have satisfaction of his debt out of testator's property? Does not a devisee take *cum onere* precisely as does an heir, under any view of the law? If, then, an administrator's deed under an order of sale by the probate court, made during the existence of a homestead estate, passes no title as to the *devisee* of the testator, as held in the Balance-Gordon case, how can it pass title as to the *heir* of an ancestor? The question carries its own answer shining on its face.

° We shall not overrule the Broyles-Cox, the Powell and the Balance-Gordon cases. *Stare decisis.*

(b) The result reached in paragraph "a" also is reached if we consider the question on the wording of homestead statutes and on the reason of the thing. Thus:

(1) In the first place it must be admitted that, as a general proposition (absent any modification by homestead acts) an heir takes under the Statute of

Descents and Distribution *sub modo,* i. e., subject to
the payment of the ancestor's debts (R. S. 1909, sec.
332); and that the creditor's claim is somewhat in the
nature of a lien. [Higbee v. Bank, 244 Mo. l. c. 425.]

**Homestead Acts: Exception to Descents.** But that concession amounts to no more
than saying that such is the general
rule of statutory law that would govern
*unless* (as happens) homestead acts
cover the whole ground and, as complete legislative
thoughts, become codes unto themselves; and, being
later enactments, are to be grafted (as also happens)
on the main stem of the statutory rule of descent sub-
ject to debts as an exception applicable to homesteads.
Now, this is precisely the office of homestead laws in
that regard as careful examination will show.   Thus:
The first homestead act (Laws 1862-3, p. 22) was of
short life and may be passed by; for it never found
place in any revision.   The next came into force and
being in the General Statutes of 1865.   [Sperry v.
Cook, 247 Mo. 132.]   That law, in force for ten years,
was borrowed from Vermont and received the con-
struction put upon it by Vermont courts.   [Skouten v.
Wood, 57 Mo. 380.]   The force and effect of that de-
cision, *contra* the general statutory rule of descent,
placed the *fee* to the homestead in the householder's
widow subject to specified and terminable rights of the
minor children and, on the widow's death, the home-
stead descended to her heirs instead of to the heirs of
the husband; this, in spite of the general statutory rule
of descent.   At once when that opinion was handed
down the Legislature in 1875 amended the Homestead
Act of 1865 by changing it so that, by the very words
of the amended act itself, the homestead descended
to the husband's heirs.   Mark, the act did not leave the
Statute of Descents to control even by implication or
construction, but, sufficient unto itself, it dealt with the

matter directly and specifically. So, when the Homestead Act of 1895 was passed it was so worded as to expressly provide for the descent of the homestead tract and the same peculiarity exists in the two Homestead Acts of 1907. [Laws 1907, pp. 300-1] Our conclusion is, therefore, that our several homestead acts, have been codes unto themselves as complete and rounded legislative thoughts. We must look to them, not to the general statute of descent, for a solution of the question in hand, to-wit, whether a homestead tract can be sold in course of administration to pay debts..

The pronouncement just made is rendered more sure when we consider the decisions of this court on questions pertaining to homestead acts. It will be found that the trend of the judicial mind in that regard has been to allow homestead questions to break on a construction of homestead acts as distinguished from the statutes of descents. For example: In the Skouten-Wood case the question of descent rode off on the construction of the Act of 1865. In the Poland-Vesper case no reference is made to the general statute of descents, but the case rode off on a construction of the very language of the Homestead Act of 1875. So in the Keene-Wyatt case. When we come to the Broyles-Cox, the Powell and the Balance-Gordon cases it will be found that they broke on a construction of the very language of the Homestead Act of 1895. The same is true of other cases. If the rule of decision heretofore adopted be allowed to obtain in this case we may not rule it under the provisions of the Statute of Descent and Distribution, but alone on a construction of the Homestead Act.

With so much determined, we come to another proposition, viz.:

(2) The reason of the thing lies emphatically with the proposition that the homestead tract should not be sold to pay debts subject to the rights of the widow

and minor children, as in this case.    This because:
The vested homestead estate of the chil-
Homestead     dren may, with exception of the uncer-
Indivisible.
tainty of life, be estimated, but that of
the widow is wholly *in nubibus;* for it is darkened by
two prime uncertainties of time, to-wit, her death and
her remarriage.    It has been held that the homestead
and fee are not "two separable and divisible inter-
ests."    They must be kept together.    [Bank v. Gu-
threy, 127 Mo. 1. c. 196.]    It is on that theory partition
will not lie while the homestead exists.    [Brewington
v. Brewington, 211 Mo. 1. c. 64.]    Moreover, to sell the
fee subject to such uncertain rights is bad public pol-
icy; for it attains but one certain end, namely, the sac-
rifice of the property of those very persons the law
holds in tender regard as its wards, viz., the widow and
the fatherless, at the very time, too, when·they most
need protection in their property rights because they
are the least able to protect themselves.    The case at
bar is a typical case in that aspect; for it is stated in
respondent's statement, additional abstract and brief,
and not denied by appellants, that this homestead sold
for a bagatelle, to-wit, $75.    When we consider that on
this record it was carved out of a larger estate a year
or so before, it must be presumed it was either of the
value of $1500 or else was of a 160 acres in extent—
such being the statutory limits of a homestead.    We
shall recur to the question of sacrifice again.

Since it is true that as the furnace proveth the
potter's vessels, so the trial of a judge in his reasoning
(See Eccles. xxvii:5, for the idea); under the head
of reason let us look a little deeper and to another
phase of the matter, to-wit, the *raison d'etre* of our
homestead acts.    What is their underlying motive?
Solicitude for creditors?    As a ways and means for
debt collecting?    Does a creditor give credit to a house-
holder on the faith of his homestead?    Certainly not.
It will be time enough, then, for this court to be as-

tute to provide ways and means for a creditor to collect his debt from a homestead tract when the lawmaker has first evinced such purpose in his homestead laws—and not before. Those laws face the other way emphatically. They of set purpose show no solicitude for creditors. It was so from the beginning; for, as already pointed out, our second homestead law vested a *fee* in the widow, except as to debts of a specified and limited character. That law cut the creditor off without the traditional shilling, except he fall in a certain class. True, as said, in 1875, a Homestead Act was passed permitting administrators under orders of probate courts to sell the homestead tract to pay debts, subject to the rights of the widow and children, or either, as the case might be. That permission ran in the following words: ". . . But all the right, title and interest of the deceased housekeeper or head of a family in the premises, except the estate of the homestead thus continued, shall be subject to the laws relating to devise, descent, dower, partition *and sale for the payment of debts against the estate of the deceased,*" etc. [R. S. 1879, sec. 2693.] It was on the italicized clause that the ruling in the Poland-Vesper case was put, and not otherwise.

Having tried out that theory in practice, it was found unsatisfactory, so that twenty years later (1895) the Homestead Act was amended. How? Mark the amendment, for thereby weighty matter hangs—by eliminating the foregoing language and making other material changes aimed at preserving the integrity of the homestead. That act read (R. S. 1899, sec. 3620):

"If any such housekeeper or head of a family shall die, leaving a widow or any minor children, his homestead to the value aforesaid shall pass to and vest in such widow or children, or if there be both, to such widow and children, and shall continue for their benefit without being subject to the payment of the debts of the deceased, unless legally charged thereon

in his lifetime, until the youngest child shall attain its legal majority, and until the death of such widow: that is to say, the children shall have the joint right of occupation with the widow until they shall arrive respectively at their majority, and the widow shall have the right to occupy such homestead during her life or widowhood, and upon her death or remarriage it shall pass to the heirs of the husband. . . ."

Closer home, what was the purpose of the Legislature in omitting in the Act of 1895 to give probate courts authority to sell the homestead tract, pending the existence of a homestead estate and subject to that estate? For the purpose of paying debts? If so, why were the very words giving that authority in the Act of 1875 left out of the amendment? To insert them anew by construction, by reference to the Statute of Descents? That would be to ignore the prime office of the amendment whereby the power to sell was stricken out. Why was it stricken out at all, if that theory is to be set on foot? The mischief to be avoided by the amendment is obvious. It is set forth by no less authority than COOLEY, J. (Showers v. Robinson, 43 Mich. l. c. 508), thus:

"But a sale thus made is likely in many cases to be ruinous to the estate, from the great uncertainty attending the continuance of the homestead right, and the consequent impossibility of finding elements of certainty whereby to determine the value of the fee subject to it. Selling the land under such circumstances is something like selling the contingent inheritance of the heir expectant, if that were salable; the one like the other depends partly upon the continuance of life, and partly upon the will and discretion of a party having a present interest. A widow entitled with her minor children to a homestead may live and claim the enjoyment of it for twenty or even fifty years, or she may die, leaving no children, in one year, or she may at once abandon the homestead right and

remove with her children to a distant State, because she finds it for her interest to reside elsewhere." (*Note*: While some of those features may be absent from our statute, yet the remarriage of the widow introduces an equivalent element. Judge COOLEY continues): "The elements of value in the fee under such circumstances are so exceedingly uncertain that it is highly improbable there could be any competition in a sale except perhaps of those who would bid for the land only what it would be worth in the contingency most unfavorable to the purchaser. A sale of anything of such uncertain value must almost of necessity be a sale at a great sacrifice. [Rottenberry v. Pipes, 53 Ala. 452.]"

It must be taken as assumed that it could not be contended for a moment that the probate court had any jurisdiction to order the sale of a homestead in contravention of the homestead statute. Now, the Statute of 1875, as construed by this court in the Poland-Vesper case and in the Keene-Wyatt case, gave such authority. That of 1895, as construed by this court in the Broyles-Cox, Powell and Balance-Gordon cases, took it away. And in that ruling we followed the *per curiam* in the Keene-Wyatt case.

It is trite learning that the state of the old law, the mischiefs arising thereunder and the remedies provided therefor in the new law, is the canonized touchstone of interpretation of amended statutes. [State ex rel. v. McQuillin, 246 Mo. l. c. 534.] How else could a court get at the intendment of the lawgiver? The precept to go by is: To know properly is to know a thing in its reason, and by its cause. [Coke. Litt. 183b.]

With that rule of interpretation in mind, the mischief of the old law and the remedy provided by the new spring spontaneously into view. The *mischief* was the sacrifice of the homestead tract as pointed out by Judge COOLEY in the quoted excerpt from the Show-

ers case. The *remedy* was to prevent such sacrifice and to make effectual the idea that the homestead is forbidden fruit to the creditor. It is our bounden duty to construe the new law so as to retard the mischief and advance the remedy. We may not, as we are invited to do, overlook both *mischief* and *remedy,* and dispose of the question as if there had been no amendment at all. To rule in that way would be to introduce an audacious and disturbing novelty into judicial exposition.

As said, in dealing with homesteads there is no legislative solicitude shown for the creditor, either during the life or after the death of the head of the family. Certainly not in life—why, then, in death? Thus, the creditor in the life of the householder cannot nail the homestead tract down and fasten it to one spot by a judgment lien. [Burton v. Look, 162 Mo. 502.] Neither can he complain of a fraudulent disposition of it. [Schaffer v. Beldsmeier, 107 Mo. 314.] Why? Because he is not allowed to meddle with it while the homestead right lasts. Nor (and this is close home) can the creditor sell the homestead tract on *fi. fa.,* subject to the homestead right while the homestead exists. [Moore v. Wilkerson, 169 Mo. l. c. 337.] If that be so in life, why should the creditor have the right to act in that way after the grizzly King of Terrors has intervened? That would be, indeed, to add a new terror to death by judicial construction. We hold death has enough of its own. On the other hand, the sole purpose of those laws, as now spread on the books, read in the lines and between the lines of the statutes, is to protect the homestead tract from the creditor. They have no other *raison d'etre.* But we have pursued the matter far.

The premises all considered, the judgment should be affirmed.

It is so ordered. *Woodson, Graves, Brown, Walker* and *Faris, JJ.,* concur: *Bond, J.,* dissents in an opinion filed.

## DISSENTING OPINION.

BOND, J.—Being unable to concur in the learned opinion of the majority of this division of the court, I hereby set forth the grounds of my dissent.

John W. Lewis died on the 22d of November, 1896. At the time of his death he owned the land in controversy and used it as a homestead. He left a widow, Margaret J. Lewis, and six minor children. During the course of administration of his estate in the probate court of Crawford county and upon the petition of the widow, a homestead was set apart upon this land and due report thereof made by the commissioners appointed for that purpose to the probate court, which was confirmed. At the same term of the court a sale of the land was regularly adjudged, *subject to the homestead rights of the widow and minor children,* for the payment of debts. Report thereof was made by the administrator, whereupon the court approved the same and directed him to execute a deed conveying the lands in controversy to S. H. Headlee, purchaser, *subject to the homestead rights of the widow and minor children.* This was done. No appeal was taken from that decree. Whatever title the purchaser acquired has been devolved upon the plaintiffs in this suit, which was brought in February, 1909. The widow of John W. Lewis, deceased, has now died. All of the six children left by him are defendants to this action and were of age at the institution of this suit, except Eugene Lewis, who was then twenty years of age, and John O. Lewis, who was then eighteen years of age. Only these two minor children then resided on the lands in controversy.

This action was brought in 1909 by plaintiffs, in virtue of the title acquired by them through the administrator's deed, to fix and determine the conflicting claims of themselves and the heirs of John W. Lewis to the title of the lands in suit. The two heirs who were then minors appeared by their guardian *ad litem,* and averred that they, together with the other adult defendants, are the owners in fee simple of the said above described lands, and denied that plaintiffs had any right or title thereto. The four adult heirs appeared and filed a similar answer. The case was tried by the court without the aid of a jury. At the conclusion of the evidence, the court, over the objection and exception taken at the time by plaintiffs (appellants), refused the following instruction requested by them.

"The court declares the law, that the homestead of the head of a family under the statutes in force in 1896, was a personal privilege or exemption from levy and sale under execution, and which followed the homestead when converted into money and reinvested; and that on the death of the head of the family the homestead passed by virtue of the provisions of the statute to the widow, or widow and minor children, as the case might be, the widow taking the life estate, contingent on remarriage, and the minors taking an estate for years, that is to say during minority; this homestead estate of the widow and minors being exempted from sale by order of the probate court for the payment of the debts of the decedent, unless legally charged thereon by him during his lifetime, but the fee passed to the heirs of the deceased homesteader under the Statute of Descents and Distribution, subject to the homestead rights of the widow and minor children and to payment of the debts of the decedent."

The court found the issues for the defendants and rendered judgment accordingly, from which plaintiffs have appealed to this court, assigning for error the refusing of the instruction requested by them.

# I.

The only question presented is the ruling of the trial court in refusing the instruction set out in the statement and adjudging the fee simple title to the land to be in defendants.

In this case, the rights of the parties are determinable under the provisions of the Homestead Act of 1895 (Laws 1895, p. 185; R. S. 1899, sec. 3620), which section has now been substituted by section 6708, Revised Statutes 1909, but the form in which it originally stood must control the decision of this case, since the death of John W. Lewis took place before the amendment of 1907 (Laws 1907, p. 301), whereby the statute contained in the present revision was substituted for that contained in the former revision; and it has been uniformly held in this State that homestead rights and the relations of all parties thereto are governed by the law existing on that subject at the time of the death of the head of the family. [Brewington v. Brewington, 211 Mo. 48; Bushnell v. Loomis, 234 Mo. l. c. 385, 386, and cases cited; Linville v. Hartley, 130 Mo. l. c. 256.]

*Homestead Acts.*

The important periods of the enactments of homestead laws in Missouri have been 1865, 1875 and 1895. Unimportant variations and changes have been made in such acts in the intervals between those three times, but the distinctive characteristics of the homestead laws and their essential variations from one another have been marked by the enactments made in the years above stated. But it is only necessary to determine the rights of the parties in this case to refer to the law on the subject of homesteads as enacted by the Legislature in 1895, since the facts of this case bring it within the application of that statute. In construing that act, this court has held that the right of the husband to

a homestead during his life is a mere exemption as to subsequent indebtedness and is not an estate in any sense and may be aliened by the joint deed of the husband and wife (Snodgrass v. Copple, 203 Mo. 480; 21 Cyc. 460), and that after the death of the husband a life estate, determinable by her marriage, is vested in his surviving widow and a right of joint occupancy of the homestead is vested in his minor children until their arrival at the age of twenty-one years. [Bushnell v. Loomis, 234 Mo. l. c. 386.]

The statute requiring interpretation in this case is, to-wit:

"If any such housekeeper or head of a family shall die, leaving a widow or any minor children, his homestead to the value aforesaid shall pass to and vest in such widow or children, or if there be both, to such widow and children, and shall continue for their benefit without being subject to the payment of the debts of the deceased, unless legally charged thereon in his lifetime, until the youngest child shall attain its legal majority, and until the death of such widow; that is to say, the children shall have the joint right of occupation with the widow until they shall arrive respectively at their majority, and the widow shall have the right to occupy such homestead during her life or widowhood, and upon her death or remarriage it shall pass to the heirs of the husband; and the probate court having jurisdiction of the estate of the deceased housekeeper, or head of a family, shall, when necessary, appoint three commissioners to set out such homestead to the person or persons entitled thereto." [R. S. 1899, sec. 3620; Laws 1895, p. 185.]

The question arising under this statute is whether an indebtedness arising subsequent to his homestead in the land in dispute, after due allowance in the probate court, was a legal basis of the order of sale regularly made by that court of the land of the deceased

*subject to the rights of homestead of the widow and minor children?* The above statute clearly excludes the right of any subsequent creditor to compel a sale through the probate court of the *homestead itself*, but it does not in terms forbid a sale of the property, *subject to the full rights of the homesteads therein.*

In the case at bar no attempt whatever was made to affect or prejudice the rights of the widow, then alive, or the minor children to the rights of a homestead in the land in question. Hence, the order of the probate court did not contravene the language nor the purpose of the above statute to provide a homestead for the widow and minor children. It simply undertook to afford creditors, having legal demands, the right to satisfaction out of the property left by the deceased *after* the expiration of all homestead rights therein given by the statute.

The Statutes of Descents and Distribution, which have been a part of our laws since the organization of the State, provide that when the owner of any real estate of inheritance dies "it shall descend . . . *subject to the payment of his debts*" (italics ours) in a prescribed course. [R. S. 1909, sec. 332.] As to the meaning of that section, the law is:

"But the estate does not vest in them absolutely. It is subject to be divested whenever the land is taken into the custody of the courts and subjected to the payment of the debts of the deceased. The law appropriates the title to the land, not as that of the heirs, but as it came directly from the ancestor." [Aubuchon v. Aubuchon, 133 Mo. l. c. 265.]

Unless that statute is to be abrogated, the creditor in the case at bar had a right to enforce his demand against the estate of John W. Lewis in the land in question, which remained after the extinction of all homestead rights. The Homestead Act under review does not purport to repeal the general statutes governing the descent of real estate. It simply exempts, dur-

ing their continuance, the determinable life estate in the widow and the estate for years in the minors.

Clearly, the Homestead Act, by the utmost stretch, does not protect the vested remainder in the lands which takes effect as a fee when the parties entitled to the homestead have lost that right. To do that a new and different enactment would have to be made by the Legislature. This has not been done.

*Homestead Act: Vested Remainders.*

Neither does the Homestead Act repeal the Statutes of Descents and Distribution by repugnancy. For the Homestead Act was not enacted, and does not purport, to exempt a vested remainder which only takes effect after the cessation of the homesteads. Yet it was this remainder alone which the probate court subjected to the allowed demands against the estate of its owner. Its action was therefore in perfect accord with the Homestead Act and in no wise repugnant or inconsistent therewith. That all estates in remainder are conveyable by the owner and available to his creditors is uncontrovertible. [R. S. 1909, secs. 2787, 2192 and 2194; White v. McPheeters, 75 Mo. 286; Brown v. Fulkerson, 125 Mo. 400; Godman v. Simmons, 113 Mo. 122; Burk v. Pence, 206 Mo. 339.]

Neither does the Homestead Act repeal the Statutes of Descent and Distribution of vested remainders therein, by furnishing a substitutionary law covering such estates. For the slightest inspection shows that the Homestead Act does not pretend to deal with the vested remainders in the land upon which the homestead is set apart. It concerns itself solely with the creation of the homestead and its protection as such, and does not undertake in any way to dispose of the ulterior estates in the land.

Now, there is no such thing as a repeal of a statute under the laws of this State, except in one of the ways above referred to. As none of them were employed, it follows that the Homestead Act did not repeal the

statutes of descent governing the devolution of the vested remainder accruing after the lapse of the homestead, and that the plaintiffs having bought only *this remainder* are entitled to its enjoyment after the expiration of the preceding homestead, which was neither bought nor claimed, and which they did not seek to recover.    Confusion of thought on this subject has sometimes occurred from the failure to bear in mind the separate estates of homesteads and the succeeding remainder in fee.    The owners of the homestead have the estate for life or years.    The remainderman has the subsequent fee.    These two complementary interests make up the entire estate in fee.    The fee of lands is never in suspension when there is a preceding life estate or one for years.    The fee cannot be in abeyance but is always vested coincidentally with the prior estates, either in the remaindermen or reversioners by law or by act of the parties.    [16 Cyc. 649, subsec. 4; 2 Blackstone, 168; 4 Kent Com. 248.]    Hence the uniform ruling, that upon the death of the housekeeper or head of a family, the homestead passes to his widow and minor children and the fee in remainder vests in his heirs, including adults or minors as may happen. The correct interpretation of the Homestead Act is plain on its face.    It simply exempts from sale for subsequent debts, the homestead itself, during the life of the husband and wife, and, after the death of the husband, during the life of the wife until marriage and during the minority of the children.    It has no other object nor effect.    No further purpose can be ascribed to it under the terms used therein.    For it cannot be construed as a devolution of the fee remaining when the homestead is gone, except by interpolating words of wholly different meaning from those contained in it.    Had the Legislature intended to protect remaindermen entitled as such, after the homestead should fall into the general estate of the decedent, it would have been a most anomalous policy, and con-

trary to the very scheme upon which homestead laws are framed, which is the protection of widows and minors; and such persons, after the extinction of the homestead, have necessarily ceased to be either widows or minors. Wherefore, it is not perceivable why they should be more entitled to inherit the property of their ancestor free from any liability for his debts than any other adult heirs would be so entitled in cases of estates descended to them wherein no homestead had existed. At least, the Legislature have expressed no such discrimination in the above act.

## II.

The learned opinion of the majority of the court refers to some cases in this State and elsewhere in support of its conclusions, that after the expiration of the homestead in the lands, the title in fee was properly decreed to be in the adult heirs of the deceased, thereby exempting it from his debts. These may be noticed. The earliest case is Skouten v. Wood, 57 Mo. 380. Judge NAPTON ruled in that case that perforce the terms of the 5th section of the Vermont Homestead Act (which had been literally copied into the Missouri act, and hence construed as in Vermont) the widow of the deceased husband who was himself seized in fee, took likewise a fee in the homestead because the *act in terms* so provided, to-wit: "And such widow and children, respectively, shall take the *same estate* therein of which the deceased died seized." (Italics ours.) [Ibid., p. 381.] So strongly and forcefully did Judge NAPTON show the irrationality of the consequence (which could not be judicially escaped *under the very terms* of the Homestead Act which had been imported with the construction given it in the home state) that the Legislature at once repealed and struck out the terms *"same estate"* descriptive of the character of homestead vested in the

*Sale of Homestead: Former Decisions.*

widow contained in the act, and adopted what was thence forth the Homestead Act of 1875, and to prevent any further judicial nonconformity with its intent inserted in the new act a provision that the estate subject to the homestead when that expired should go according to the statutes of descents. [Laws 1875, p. 60.] Following the law as thus changed, came the decisions in Division One. [Broyles v. Cox, 153 Mo. 242, and In re Powell's Estate, 157 Mo. 151.] The rulings in these two cases were to the effect that the Homestead Act as amended prevented the sale of the lands subject to it until the homestead expired. Division Two, however, on the next presentation of the question, took it up and in an unanimous decision expressed a contrary view, and after a full review of the authorities referred its opinion to Banc in order that the law might be harmonized and clarified on this subject. [Keene v. Wyatt, 160 Mo. 1.] Thereupon, the matter was considered in Banc, which, in an opinion concurred in by all the judges except MARSHALL, J., adjudged that the cases of Broyles v. Cox and In re Powell's Estate, supra, really turned upon a construction of the Homestead Act of 1895, and hence the observations in those two opinions in reference to the preceding Homestead Act of 1875 were mere *obiter dicta*; and added:

"But the rulings in those cases to the effect that the homestead of a deceased housekeeper or head of a family, within the statutory size and limits, cannot be sold under the Homestead Law of 1875, by an order of the probate court of the proper county, for the payment of the debts allowed against the estate of the deceased, subject to the homestead rights of the widow and minor children, are disapproved. With these suggestions, the foregoing opinion of BURGESS, J., in Division Two, is approved, and adopted by the Court in Banc. *Burgess, C. J., Sherwood, Robinson, Brace, Valliant* and *Gantt, JJ.*, concur; *Marshall, J.*, dissents.

Hence, it must be clear that, except MARSHALL, J., the entire court adjudged the salability of the remainder in fee, subject to the homestead under the Homestead Act of 1875. The interpretation of the Homestead Act of 1875 having been thus put at rest, the next decision was rendered under the Homestead Act of 1895 (being the one presented for review in the present case). In that case (Balance v. Gordon, 247 Mo. 119), the opinion was written by the learned writer of the opinion of the majority in the present case. The facts as we gather them are: The householder devised his two lots to his wife for life with remainder to one of his children. He died in 1898. In the course of administration of his estate it is said, "that the lots were sold by an order of the probate court and were sold to pay the Taylor debt and said costs." Administrator's deed was made to the purchasers who afterwards acquired the widow's interest by deed.    A suit was brought by the devisee under the will to establish her title thereunder, when the foregoing facts and others were set up by the defendants who represented the purchaser under the administrator's deed and the grantee under the deed from the widow. It was held that the sale ordered by the probate court was void, and that the plaintiff was entitled to recover the fee after the expiration of the life estate of the widow. It is not necessary that an attempt should be made to sustain that ruling on the narrow ground that there was technical error in the form of the order of sale made by the probate court, in that it should have required the sale of the lands to be made subject to the homestead rights of the widow and minor child. While this was a formal error, yet it did not affect the rights of the parties under that sale, since the administrator's deed should have been held good as to the remainder and not good as to the preceding homestead. Evidently it was the intention of the opinion in Balance v. Gor-

don, supra, to treat the question on the broad ground that the administrator's deed was void both as to the remainder and the homestead estates, and this was the view expressed in the opinion, and to sustain which it construed the Homestead Act of 1895 as constituting a direct legislative repeal of the general statutes of descent and distribution governing the transmission of property upon the death of the owners. And it is that view, so far as it holds the sale was void as to the remainder estate, to which I dissent as wholly untenable from any possible viewpoint of the language and objects of the Homestead Act of 1895, opposed to wise public policy if not the organic law, and in contravention of the necessary conclusions of reason resting on the foundation principles of the law. The only theory which seems to be advanced in Balance v. Gordon, supra, and the present opinion of the majority, against the right of a creditor having an allowed demand to obtain sale in the course of administration of the land upon which a homestead exists subject in all respects to the full rights of a homestead therein, is, that the Homestead Act of 1895, above quoted, does not *in totidem verbis* recite that such right is given as did the Act of 1875. The answer is that unless that right is directly inhibited by the Homestead Statute of 1895 as it was in the Act of 1865, then it must exist perforce the Statutes of Descent and Distribution, which govern and control the transmission of property of every citizen of this State. That it is *not* directly forbidden by the Homestead Act in question is apparent from the merest glance at the terms of said Homestead Act.

This leaves no support for the theory of the case of Balance v. Gordon except the contention that the *silence* of the Homestead Act of 1895 as to the transmission of the remainder after the lapse of homestead rights, operates as a repeal of the general statutes of distribution governing the course of that estate when

belonging to any decedent at the date of his death.
Neither law nor logic will permit that conclusion to
be drawn.  It is diametrically opposed to the estab-
lished law governing all repeals of statutes, which, as
has been shown, can only be done in a triform way:
(1) by express terms; (2) by repugnancy; (3) by a
new substitutional act covering the entire subject.
Can it be said that the Homestead Act in question ex-
pressly repeals the general statutes of distribution as
to those estates in remainder which arise only *after*
the homestead estate has been fully spent?  The an-
swer must be in the negative, for the Homestead Act
of 1895 contains no repealing words.  Can it be held
that the acts are repugnant and therefore the latter
repeals the former?  The same answer must be given,
because the sole object, scope, purpose and design of
the Homestead Act was to protect those rights as long
as they exist, and *not any other or later estate*.  How
then can it be that a disposition of the *after* estate
militates against the full enjoyment of the prior home-
stead estate, when the very terms of the disposition
show that it is *subject* in all and every respect to the
full enjoyment of those rights?  If this must be ad-
mitted, then the two acts are not repugnant.  Again,
can it be said with any show of reason or even plausi-
bility that a homestead act which is absolutely *silent*
on the point of transmission or descent of an after
estate (i. e., fee in remainder after the homestead) is
a substitute act for the full and specific directions con-
tained in the general statutes of descent on that sub-
ject, when the alleged substitute act *uses no terms
whatever* in reference to the provision in question?
This must be also denied, unless an act with *no* pro-
vision on a particular subject is a full and complete
substitute for another which deals fully with the sub-
ject.  This, of course, cannot be.  I hold, therefore,
that the conclusion that the Homestead Act of 1895
contains within itself a repeal *in any mode* of the pro-

visions of the general statutes of descent and distribution governing estates in remainder arising after the full enjoyment of the homestead protected by that statute, can only rest from any possible standpoint on demonstrable fallacies forbidden both by law and logic. For these reasons I think the decision in Balance v. Gordon was ill considered and should be disapproved and overruled in order that the interpretation by this court of the Homestead Act of 1895 should rest upon the stable basis of its language and terms and not upon the interpolation therein of a repealatory clause or upon legal fiction, in order to annihilate the Statutes of Descent and Distribution relative to a subject plainly beyond the scope of the purpose and object of the Homestead Act. That this is the sound and true view is apparent from the clear rulings of the decision of Division Two in Keene v. Wyatt, supra, adopted, as shown above, by the Court in Banc, and the authorities therein cited; by Poland v. Vesper, 67 Mo. 727, as well as the inescapable view of the meaning of the Homestead Act of 1895 arising from the consideration of the words and language of the act itself and its sole purpose to protect the beneficiaries of the exempted estate, and not to protect the heirs or devisees of any other estate. I doubt whether this has been put with more clearness and force than in the following language of Poland v. Vesper, supra. In that case, speaking of the Homestead Act of 1875, it is said:

"The object of the statute was to secure a home for the widow and minor heirs, and the sale of the land subject to the homestead right could in no manner interfere with them in the enjoyment of that right."

The court further held that the instruction requested by plaintiff should have been given which "declared that the administrator's deed conveyed the title to the plaintiff, subject to the homestead right of the widow and the defendant, and that the widow having died and the defendant attained his majority be-

fore the commencement of the suit, plaintiff was entitled to recover.'' It is no answer to the logic of this opinion to say, that the Act of 1875 contained a recital that the homestead estate, subject to the rights thereof, should pass by descent. That statute, as has been shown, was passed to meet a decision under the first homestead act taken from Vermont, which act contained *terms in itself* constituting a repeal of the Statute of Descent and Distribution. But the Legislature struck out those repealatory terms. *They have not been reinserted in the Act of* 1895. And the whole argument of Balance v. Gordon, supra, in the last analysis rests necessarily on the assumption that because the Act of 1895 did not adopt the precaution of the Act of 1875 of making an express provision that the statutes of descent should control property after the cessation of the homestead, therefore the *want* of such a provision showed that the Legislature intended in the Act of 1895 to repeal and overthrow the Statutes of Descent and Distribution which fully cover and provide for that subject. The bare statement of this view discloses its logical infirmity. The old statute of 1865 cannot be revived in effect or re-enacted by the mere failure of the Act of 1895 to include within its terms one of the provisions of the Act of 1875, which act also had expressly repealed that provision of the Act of 1865, which was the only support *while* it existed that can be pointed to in the statute law of this State for the view expressed in Balance v. Gordon, supra, and the majority opinion, to-wit, that the Statutes of Descent and Distribution were repealed as to their governance of subsequent estates by the terms of the Homestead Act. Repealed statutes are not revived in that way in this State.

## III.

Some reference is made in the learned opinion of the majority of the Division in this case to an emi-

nent lawyer, Judge Cooley, and a quotation from *one* of his opinions is made. Judge Cooley,

Sacrifice of
Homestead
by Sale.

as shown by Judge Marshall in his dissenting opinion (Keene v. Wyatt, 160 Mo. 9), had already decided the point the other way. However, a careful examination of the subsequent reference to Judge Cooley's latter opinion by the Supreme Court of Michigan will show that the rule quoted from him (43 Mich. 508), in the majority opinion, would have no application whatever to a case like the present, which, according to Judge Cooley, would fall within the reasoning and judgment announced by him in the previous case. [38 Mich. 232.] For here, as in that case, there was *no* appeal from the order of the county court directing the sale of the land subject to the homestead rights. Where that is so, Judge Cooley held in both opinions that such a sale was impregnable to a collateral attack, which is exactly the sort of attack defendants make in this case against the validity and enforceability of the judgment of the county court directing the sale to plaintiff's grantors and confirming the deed made to him. But the Supreme Court of Michigan did not stop even there. It distinctly stated in In re Emmons' Estate, 142 Mich. l. c. 309, in referring to the argument that there ought to be no sale of land subject to homestead until after the homestead was ended, as follows:

"If the import of this argument is understood, it is that such a homestead—one in value no more than $1500—cannot be sold at all, if the statute is followed, unless it falls into the estate before the time otherwise limited by statute for closing the estate, or before the time when the estate is, otherwise, actually closed. Such a holding would do violence to settled rules of construction. There may be difficulties in fact, but there is no legal difficulty in saving both the constitutional homestead for those entitled to it, and, ulti-

mately, the value of the fee for creditors of the decedent."

It must be noted that in Michigan the homestead exemption is created by the Constitution of that State.

Again, in speaking directly of the two decisions of Judge COOLEY the Supreme Court of Michigan in Burkhardt v. Walker & Son, 132 Mich. 1. c. 95, cites the positions of the defendants based on those two cases and thereafter determines the effect of them in the following language:

"In support of the third claim for reversal, defendant says: 'The complainant's homestead right, by virtue of being the wife of the execution defendant, was simply a contingent right of occupancy, not an interest in the fee. . . . The fee of the execution defendant, subject to the homestead rights of the wife, . . . and other incumbrances, can be sold on execution. [Showers v. Robinson, 43 Mich. 502; Drake v. Kinsell, 38 Mich. 232.]

"The most that can be claimed for these cases is that they establish the proposition that an administrator's sale, under an order of the probate court, of the homestead of the family of his intestate, subject to their homestead rights, is valid, if the order authorizing such sale is not appealed from."

And, again, in discussing the whole subject and reviewing specially both decisions of Judge COOLEY and in answer to the contention in a case which attacked the validity of a sale of property subject to homestead rights, said in conclusion:

"We think it clear that if this decree is to stand, now that the children have attained their majority (excepting Mrs. Foster, who has a home elsewhere) it must stand upon other grounds than because the sale is void on the ground that the land was a homestead." [Louden v. Martindale, 109 Mich. 1. c. 241; Carrigan v. Rowell, 96 Tenn. 1. c. 192; McCaleb. v. Burnett, 55

Miss. 83; Derr v. Wilson, 84 Ky. 14; Thompson on Homesteads, sec. 738.]

Moreover, the suggestion based on the quotation from Judge COOLEY, that a sale of the fee in remainder would cause a sacrifice of the property of the ultimate owners, wherefore the court should make the Homestead Act read so as to forbid such a sale, cannot have any force whatever: (1) Because it was not the purpose of the Homestead Act to do other than protect the homestead estate itself, and that estate would have been in nowise diminished nor its full enjoyment impaired even if the one which came after was sold below its value; (2) because the Legislature could not have designed to protect these remainders following homesteads when it has not protected any other remainders; for the law is unquestionable that all vested or even contingent remainders, are salable under execution when the owner is alive or on an administration after his death, before the falling in of the preceding estates. Clearly, therefore, it could not have been the legislative purpose to create a distinction between some remainders and all others, for it could not thus discriminate between individuals without violating the constitutions, State and Federal, guaranteeing to each citizen the equal protection of the laws as well as the "lawful gains" of his industry. As it is undeniable that any other vested remainder (than that which follows a homestead estate) which might belong to a deceased owner would follow the statutory course of descent and pass to his heirs, subject to the payment of his debts, why should not the same ruling govern the vested remainder which exists in property subject to the homestead estate of the widow and minor child? There can be no difference in reason or principle between the two cases.

It is thus clear that the excerpt from *one* of the opinions of Judge COOLEY quoted in the majority opin-

ion furnishes no support for its conclusion in the present case.

## IV.

The Homestead Act of 1895 and the general statutes of descent and distribution are entirely harmonious and reconcilable with each other—the one protects homesteads; the other governs remainders thereafter and every other species of property of a decedent. There is no possible antagonism or inconsistency between their respective objects. This is perfectly illustrated in the case at bar. Here, the remainder was sold subject in all respects *to all the rights of homestead,* thus preserving them intact and achieving the full objects of the Homestead Act. I hold that it is a contradiction in terms to say that such a sale is a destruction of any rights of homestead which are expressly excluded from it in the deed given to the purchaser.

**Statute of Descents: Exception.**

## V.

For the foregoing reasons I must dissent to the learned opinion of the majority of the court in this division. I think the judgment of the trial court should be reversed and remanded for its failure to give the instruction requested by plaintiffs—which is an accurate statement of the law of this State—and that a decree should be rendered in accordance with the ruling therein announced.

The foregoing opinion is refiled as my dissent to the opinion adopted in this case in Banc.