LOUIS KAY, Appellant, v. IDA M. POLITTE, Widow of THOMAS M. POLITTE; RAYMOND POLITTE, HOWARD POLITTE, THOMAS DORSEY POLITTE, JAMES POLITTE, RUBY POLITTE, CLAY POLITTE, MARTHA POLITTE, FERN POLITTE, WILLIAM C. POLITTE, LINDELL POLITTE, PAUL POLITTE, WILLIAM L. VAUGHN and HAROLD KAMP.—129 S. W. (2d) 863.

Division One, June 14, 1939.

*Terry, Terry & Terry* for appellant.

*Sam M. McKay* and *Clyde Williams* for respondents; *Clyde Williams* guardian *ad litem* for minor respondents.

BRADLEY, C.—This is an action to determine title to and to partition certain lands in Jefferson and St. Francois Counties. The cause was commenced in Jefferson County, but the venue was changed to St. Francois. Defendants contend that plaintiff had no interest in the lands. It was found, however, that he was the owner of a one-eleventh interest, but subject to the dower and homestead interest of defendant, Ida M. Politte, and the homestead interest of the minor defendants, William C. and Lindell Politte. And it was found that defendants, Paul and Dorsey Politte, had no interest; that other defendants, except Ida M. Politte, Vaughn and Kamp, had a one-eleventh interest in fee, subject to the homestead and dower interests, and that the interests of certain named adult defendants and defendant, Ida M., were subject to a deed of trust held

by defendants, Vaughn and Kamp. It was found that the lands were in excess of 500 acres and were of a value in excess of $10,000. Commissioners were appointed to set out the homestead, and the remainder was ordered sold, because not susceptible of partition in kind. Motion for a new trial and motion in arrest were filed and sustained, and plaintiff appealed.

Thomas M. Politte died August 13, 1920, and, at the time of his death, he, with his family, resided upon the 500 acre tract, and it was conceded that the widow, Ida M. Politte, and the minors had a homestead in said lands. Whatever interest, if any, plaintiff has was derived from an execution sale based on a judgment against Paul Politte, a son of Thomas M. and Ida M. Politte. May 20, 1922, The Peoples Bank of DeSoto obtained a judgment against Paul for $477.42. May 1, 1925, execution was issued on this judgment, and on May 2, 1925, what is called a *lis pendens* notice was filed by the special deputy commissioner then in charge of the Peoples Bank. The notice gave the date of the judgment, the amount, and recited that execution was ordered, and would be returnable to the September 1925, term of the court. Under the execution the sheriff levied upon whatever interest Paul had in the lands in question, and at the execution sale on November 3, 1925, plaintiff was the highest bidder, $477.50, and received the sheriff's deed purporting to convey to plaintiff all of Paul's interest in said lands.

December 8, 1921, Paul made a warranty deed to his brother Dorsey, a defendant, purporting to convey Paul's interest in the Politte lands, but this deed was subsequent to the notes given by Paul to the Peoples Bank and upon which notes the bank's judgment was based. The consideration recited in the warranty deed was "one dollar and other good and lawful considerations." This deed was acknowledged on the date of its execution, but was not filed for record until May 6, 1925, which was five days after levy under the execution, and four days after the *lis pendens* was filed. Plaintiff in his reply, pleaded that the deed from Paul to Dorsey was without consideration and was void as to creditors, and the trial court so found.

The defense that plaintiff has no interest in the lands is based on two contentions: First, that the execution sale and the sheriff's deed were wholly void, because, it is claimed, that lands, in which there is a homestead, cannot be sold, even though sold subject to the homestead, to pay the debt of an adult son or daughter of the deceased homesteader, and that, therefore, plaintiff acquired no interest by reason of the execution sale and sheriff's deed; and second, it is contended that the conveyance from Paul to his brother, Dorsey, was valid, and that, therefore, Paul had no interest at the time of the execution sale.

██ The rights of the widow, minor children, and creditors in

the homestead is determined by the law in force at the time of the death of the homesteader. [Dennis et al. v. Gorman, 289 Mo. l. c. 233 S. W. 50; Armor et al. v. Lewis et al., 252 Mo. 568, 161 S. W. 251.] As appears, supra, Thomas M. Politte, the owner of the homestead lands died August 13, 1920, hence the rights mentioned are to be determined under Section 5857, Revised Statutes 1919, now Section 612, Revised Statutes 1929 (Mo. Stat. Ann., sec. 612, p. 4227), and which has remained unchanged since 1907, Laws 1907, page 301.

Section 612, Revised Statutes 1929, is as follows: "If any such housekeeper or head of a family shall die and leave surviving him a widow or minor children, his homestead, to the value aforesaid, shall pass to and vest in such widow or children, or if there be both, to such widow and children, and continue for their benefit until the youngest child attains the age of twenty-one years and until the remarriage or death of such widow; that is to say, the children of the deceased shall have the joint right of occupation with the widow until they shall arrive, respectively, at the age of twenty-one years, and the widow shall have the right to occupy such homestead during her life or widowhood, and upon her remarriage or death it shall pass to the heirs of the husband. Such homestead shall not be subject to sale for the debts of the husband *unless such debts be legally charged thereon during his lifetime, for which said debts the same may be sold free from the rights of such widow, children or heirs; Provided, that if the heirs of the husband be persons other than his children, then such homestead may be sold for the payment of any debt or debts legally established against his estate, subject to the rights of the widow.* Such sale in either case may be made at any time during the course of administration of the husband's estate, and to be conducted in like manner and the same proceedings had as is or may be provided by law for sales of other real estate for the payment of the debts of deceased persons. The probate court having jurisdiction of the estate of any deceased housekeeper or head of a family shall, when necessary, appoint three commissioners to set out such homestead to the persons entitled thereto." (Italics ours.)

A probate court has no power or jurisdiction to order the sale of homestead land, even though such sale is to be subject to the homestead of the widow and minor children, or either, to pay debts of the deceased homesteader contracted subsequent to the acquisition of the homestead and not made a charge thereon during the life of the homesteader, and a sale under such an order is utterly void. [Sec. 612, supra; Dennis et al. v. Gorman, and Armor et al. v. Lewis et al., supra.]

There can be no valid order or sale to pay debts of the deceased homesteader, except as authorized by that part of Section 612 which we have italicized. The reasons pro and con for the law as stated are given at length in Armor et al. v. Lewis et al. (banc), supra, opinion by LAMM, C. J., and in the dissenting opinion by BOND, J.

The majority opinion in the Armor case construes the homestead statute in connection with a sale, subject to the homestead, to pay a debt of the homesteader contracted subsequent to the acquisition of the homestead, but not made a charge thereon. Judge LAMM, in that case, gives the reasons why such sale cannot be had as follows (252 Mo. l. c. 578):

"The reason of the thing lies emphatically with the proposition that the homestead tract should not be sold to pay debts subject to the rights of the widow and minor children, as in this case. This because: The vested homestead estate of the children may, with exception of the uncertainty of life, be estimated, but that of the widow is wholly *in nubibus;* for it is darkened by two prime uncertainties of time, to-wit, her death and her remarriage. . . . Moreover, to sell the fee subject to such uncertain rights is bad public policy; for it attains but one certain end, namely, the sacrifice of the property of those very persons the law holds in tender regard as its wards, viz., the widow and the fatherless, at the very time, too, when they most need protection in their property rights because they are the least able to protect themselves."

The same situation, as here, so as concerns the execution sale, existed in Kelley v. Parman (Mo. App.), 282 S. W. 755, and it was held that land, in which there is a homestead, cannot be sold, subject to such homestead, to pay the debt of an adult son of the deceased homesteader. The *sacrifice reason* presented in the Armor case, supra, was given for the conclusion reached. The court, in the Kelley case, said [282 S. W. l. c. 756]:

"One of the chief reasons assigned for holding that the remainder in fee cannot be sold subject to the homestead to pay debts of the deceased is the great uncertainty as to the possible duration of the homestead which would necessarily result in a sacrifice of the property. [Armor v. Lewis, 161 S. W. 251, 252 Mo. l. c. 581 et seq.] That result would be as certain in a sale of the remainder under a judgment against an adult heir as it would be under an order of sale by the probate court to pay debts of the deceased."

But construction must not run counter to the plain law. Any interest in land, even a contingent remainder, may be *conveyed,* if no restrictions are placed on alienation. [Sec. 3014, R. S. 1929, Mo. Stat. Ann., sec. 3014, p. 1862; Brown et al. v. Fulkerson, 125 Mo. 400, l. c. 403, 28 S. W. 632; Bradley v. Goff et al., 243 Mo. 95, 147 S. W. 1012; Godman v. Simmons, 113 Mo. 122, 20 S. W. 972.] Section 1172, Revised Statutes 1929 (Mo. Stat. Ann., sec. 1172, p. 1431), specifies what property may be sold under attachment or execution, and, among other things, this section provides: "The following property shall be liable to be seized and sold upon attachment and execution issued from any court of record: . . . fifth, all *real estate* whereof the defendant, or any person for his use, was seized, in law

or equity, at the time of the issue and levy of the attachment, or rendition of the judgment, order or decree whereon execution was issued, or at any time thereafter." Section 1174, Revised Statutes 1929 (Mo. Stat. Ann., sec. 1174, p. 1432), provides that the term *real estate* "as used in this article (executions and exemptions), shall be construed to include *all estates and interest* in lands, tenaments and hereditaments." (Italics ours.)

There can be no doubt that Paul Politte, upon the death of his father, became vested with an interest in the Politte lands, but this interest was subject to the homestead of his mother and the minor children. It is equally clear that Paul's interest was vendible, and was, if the conveyance to his brother, Dorsey, was void, because in fraud of creditors, "liable to be seized and sold" at the execution sale at which plaintiff purchased. Reaching this conclusion we necessarily overrule the opinion in Kelley v. Parman (Mo. App.), 282 S. W. 755, in so far as it runs counter to the ruling here.

The above disposes of this case, except the question as to whether or not the conveyance of Paul Politte to his brother was void as in fraud of creditors. Hon. I. N. Threlkeld was the trial judge and Hon. Taylor Smith, successor judge, sustained the motion for a new trial. Judge Threlkeld held, as appears above, that the conveyance by Paul Politte to his brother Dorsey was void because in fraud of creditors. We do not think it necessary to detail the evidence on the conveyance from Paul to Dorsey. It is, we think, sufficient to say that there was ample evidence to support the finding as to this conveyance, and that we approve that finding.

The order and judgment granting a new trial should be reversed and the cause remanded with directions to set aside the order granting a new trial, and set aside the order sustaining the motion in arrest, and reinstate the original judgment with such modification as may be necessary to take care of the widow's dower. [See Sec. 614, R. S. 1929, Mo. Stat. Ann., sec. 614, p. 4234.] It is so ordered. *Hyde* and *Dalton, CC.*, concur.

PER CURIAM:—The foregoing opinion by BRADLEY, C., is adopted as the opinion of the court. All the judges concur.